UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VAN A. LUPO, <br>         Plaintiff <br><br> v. <br><br> BANKAMERICA CORPORATION & <br> SHERYL LUPO <br>         Defendants | C.A. Number 04-40202-FDS |

## AMENDED COMPLAINT

### Introduction

1. Plaintiff /Consumer, Van A. Lupo, brings this action for compensatory, exemplary, and punitive damages against Defendant pursuant to Defendant's violations of the Consumer Credit Protection Act, 15 U.S.C. §1601 *et seq* (hereinafter, "CCPA"); the Massachusetts Consumer Credit Disclosure statutes, M.G.L. c. 140D *et seq* (hereinafter, "Credit Disclosure Statues"); the Division of Banks and Loans Regulatory Code promulgated by the commissioner of Banking for the Commonwealth of Massachusetts, 209 CMR 32.00 *et seq* (hereinafter, "Disclosure Regulations"); and Massachusetts Consumer Protection Act, M.G.L. C 93A (hereinafter, "Ch. 93A") due to

    a. Defendant's blatant, unfair, and deceptive refusal to disclose credit card information, namely the signature page of the application, requested by Plaintiff;

    b. Failure to remove reported negative credit history from the three major credit reporting companies' public records;

    c. And refusal to meet its burden of proof to show that the credit use was authorized.

2. Plaintiff also asserts common law claims for relief against said Defendant.

3. BankAmerica Corporation counter-claimed against Plaintiff with the following:

   a. Breach of Credit Card Agreement claim

   b. A "For Money had and Received" claim

   c. An Unjust Enrichment claim

4. Plaintiff, upon being counter-claimed against, and upon learning that Sheryl Lupo had not filed for Federal Bankruptcy Protection amended the Pleadings to add Sheryl Lupo as a Defendant.

## Jurisdiction and Venue

2. This Court's Jurisdiction arises under 15 U.S.C. §1601(d) and 28 U.S.C. §1331. This Court has Supplemental Jurisdiction to hear and adjudicate Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(c).

## Parties

4. Plaintiff Van A. Lupo is a natural person and individual who resides in Hopedale, Massachusetts, Worcester County.

5. Defendant BankAmerica Corporation is a Corporation incorporated in the State of Delaware. At all times relevant to this Complaint it was engaged and still is engaged in substantial business in the Commonwealth of Massachusetts.

6. Defendant Sheryl Lupo is a natural person and individual who resides in Huntington Beach, California, Orange County.

## **Factual Allegations**

7. A person reputing to be with BankAmerica Corporation and claiming that Mr. Lupo had an outstanding balance with BankAmerica from a credit card issued in September of 1992 called plaintiff Van A. Lupo on his cellular phone in the fall of 2003. Up until that point, Mr. Lupo was never aware of any credit card, never mind a balance, with BankAmerica Corporation.

8. Mr. Lupo informed that person that he was divorced and that his ex-wife was responsible for much of the credit card debt, and perhaps BankAmerica Corporation should be calling her. The BankAmerica Corporation representative noted that the credit card was allegedly a joint account.

9. Mr. Lupo requested that he be sent an original copy of the signature page of the credit card application to verify that it was indeed his signature. No such signature page was forthcoming.

10. In December of 2003 Mr. Lupo requested a credit report from Trans Union and received said credit report.

11. Mr. Lupo noticed that BankAmerica Corporation had reported this account to Trans Union as "charged off as bad debt" (attached hereto as Exhibit A)

12. Mr. Lupo disputed the report from BankAmerica Corporation to Trans Union, and in February of 2004, Trans Union reported back to Mr. Lupo that the BankAmerica Corporation report was "verified" (attached hereto as Exhibit B).

13. When Mr. Lupo learned that BankAmerica Corporation was continuing to report the credit card balance on his credit report, he attempted to call BankAmerica Corporation to resolve this matter.

14. At that time, Mr. Lupo was informed that an Attorney Eskoner, a professional debt collector, was handling the BankAmerica Corporation account.

15. Mr. Lupo spent the next few weeks attempting to contact Attorney Eskoner, and finally learned that Attorney Eskoner's firm had closed the account and returned it to BankAmerica Corporation on March 22, 2004.

16. Mr. Lupo then retained counsel. On May 27, 2004, present counsel, called BankAmerica Corporation's credit card department and spoke with a Ms. Laura Taffea [sic]. Ms Taffea [sic] told present counsel to send a formal letter of dispute to BankAmerica Corporation's Credit Dispute Bureau.

17. On May 27, 2004, present counsel sent a letter, via facsimile and certified mail to BankAmerica Corporation Credit Dispute Bureau requesting that they produce the signature card. (Attached hereto as Exhibit C).

18. As of July 23, 2004 BankAmerica Corporation is still reporting this credit card debt as "charged off" (Experian credit report attached hereto as Exhibit D).

19. As of this date, BankAmerica Corporation has failed to produce the signature card or acknowledge the letter.

20. BankAmerica Corporation responded to this Complaint with various documents and information. See Exhibits 1-5 from Defendant BankAmerica Corporation's Answer and Counter-claim herein attached at Exhibit E.

21. In the documents provided it became clear that Sheryl Lupo had forged the Plaintiff's name on at least one occasion, namely the Transfer of Responsibility form.

22. Sheryl Lupo also listed the debt owed to BankAmerica Corporation as her debt on a duly filed Declaration of Disclosure/Schedule of Assets and Debts with the Superior Court of

California Orange County. See Declaration of Disclosure/Schedule of Assets and Debts attached hereto as Exhibit F.

23. The Marital Settlement Agreement entered into by the parties in the State of California on July 8, 2002 clearly states that Ms. Lupo is responsible for all debt she incurred and there is language which indemnifies the Plaintiff from harm resulting in her breach of that responsibility. See Marital Settlement Agreement of July 8, 2002 attached hereto as Exhibit G.

# COUNTS and DEMAND AGAINST BANKAMERICA CORPORATION

## COUNT I

## VIOLATIONS OF THE FEDERAL CONSUMER CREDIT PROTECTION ACT
## 15 U.S.C. §1601, *et seq*

24. The allegations of paragraphs 1-18 are realleged and incorporated herein as if fully set forth.

25. At all times relevant to this complaint Plaintiff was a "consumer" within the meaning of 15 U.S.C.§1602(h).

26. The credit at issue here constitutes "credit" within the meaning of 15 U.S.C. §1602(e) and the debt was incurred as a result of credit used on a "credit card" within the meaning of 15 U.S.C. § 1602(k).

27. At all times relevant to this complaint Defendant was a "creditor" within the meaning of 15 U.S.C. §1602(f), to wit, it regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and

28. Defendant violated the Consumer Credit Protection Act in the following respects:

  (a) Defendant violated 15 U.S.C. §1637 by refusing, despite numerous requests by the Plaintiff, to disclose the relevant information, such as the signature page of the application, of the credit card at issue in the present case;

  (b) Defendant violated 15 U.S.C.§1642 by issuing a credit card in the Plaintiff's name without being in response to a request or application from the Plaintiff;

(c) Defendant violated 15 U.S.C.§1643 by shifting the burden of proof to the Plaintiff to prove to the Defendant and the three major credit reporting agencies, that he was not liable for the use of the credit card;

(d) Defendant is in violation of 15 U.S.C. §1611 because it willfully and knowingly failed to provide information which it is required to disclose under the provisions of the federal Consumer Credit Protection Act.

29. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with reasonable attorney's fees.

## COUNT II

## <u>VIOLATIONS OF THE MASSACHUSETTS CONSUMER CREDIT DISCLOSURE ACT</u>
## <u>M. G. L. c. 140D *et seq*</u>

30. The allegations of paragraph 1-24 are realleged and incorporated as if fully set forth herein.

31. Defendant is a "Creditor" within the meaning of M.G.L. c. 140D §1

32. Defendant has engaged in the following conduct in violation of the Massachusetts Consumer Credit Disclosure Act:

   (a) Defendant violated M.G.L. c. 140D §11 by refusing, despite numerous requests by the Plaintiff, to disclose the relevant information, such as the signature page of the application, of the credit card at issue in the present case;

   (b) Defendant violated M.G.L. c. 140D §25 by issuing a credit card in the Plaintiff's name without being in response to a request or application from the Plaintiff;

   (c) Defendant violated M.G.L. c. 140D §26 by shifting the burden of proof to the Plaintiff to prove to the Defendant and the three major credit reporting agencies, that he was not liable for the use of the credit card;

   (d) Defendant is in violation of M.G.L. c. 140D §31 because it willfully and knowingly failed to provide information that it is required to disclose under the provisions of the Massachusetts Consumer Credit Disclosure Act.

33. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with reasonable attorney's fees.

## COUNT III
## <u>VIOLATION OF DIVISION OF BANKS AND LOANS REGULATORY CODE</u>
## <u>209 C.M.R. §32.00,</u> *et seq*

34. The allegations of paragraph 1-28 are realleged and incorporated as if fully set forth herein.

35. Defendant has engaged in the following conduct in violation of the Division of Banks and Loan Agencies Rule, to wit, Defendant violated 209 CMR §32.05A by refusing, despite numerous requests by the Plaintiff, to disclose the relevant information, such as the signature page of the application, of the credit card at issue in the present case;

36. In addition, Defendant violated 209 CMR §32.05A(5)(d) by failing to promptly and fully disclose the information requested by the Plaintiff.

37. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with reasonable attorney's fees.

## COUNT IV

## VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT
## M.G.L. c. 93A

38. The allegations of paragraph 1-32 are realleged and incorporated as if fully set forth herein.

39. The acts and practices of BankAmerica Corporation, in failing to disclose to Mr. Lupo the information he requested on his alleged credit card use, constitutes an unfair or deceptive act or practice pursuant to Massachusetts General Laws Chapter 93A, §§ 2 and 9.

40. The actions of the defendant described above were performed willfully and knowingly.

41. As a result of the unfair or deceptive acts or practices of the Defendant, the Plaintiff has lost the ability to apply for and receive credit, and has sustained financial burdens in pursuing the relief requested.

42. In May 2004, the Plaintiff, through his attorney, sent to the defendant by certified mail, postage prepaid, a written demand for relief pursuant to M.G.L. c. 93A, § 9, identifying the claimants and reasonably describing the unfair acts or practices relied on and the injuries suffered. A copy of this letter is attached hereto as Exhibit C.

43. As of the date of this Complaint, the Defendant has failed to respond to the letter in any form or manner.

44. WHEREFORE, the Defendant is liable to Plaintiff for damages and the cost of this suit, including reasonable attorney's fees.

## COUNT IV
## **LIBEL**

45. The allegations of paragraph 1-39 are realleged and incorporated as if fully set forth herein.

46. To prove libel, first there must be a statement, in writing or a similarly permanent form, which has the effect of harming the Plaintiff's reputation in the community. By reporting negative credit to the three major credit reporting company, and by knowing that that information would be disseminated to anyone requesting credit information on the Plaintiff, the Defendant made a written statement that had the effect of harming the Plaintiff's reputation.

47. Second, the defamatory statement must also be false and untrue and the Defendant has the burden of proving the truth of the statement as an affirmative defense. The Plaintiff claims that he did not knowingly and willingly sign the signature page on the credit application with the Defendant. The Defendant, despite numerous requests, has failed to produce such proof. Thus the statement to the credit reporting agencies is false and untrue.

48. Third, there must be a publication of the defamatory matter, meaning that at least one person other than the parties to an action for defamation must have been exposed to the defamatory material. By continuously reporting the libelous credit history to the major credit reporting agencies, and hence to all others who request a credit history of the Plaintiff, there has been publication of the defamatory matter.

49. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## DEMANDS

50. Plaintiff demands Trial by Jury on each Claim herein.

51. Plaintiff demands that the Defendant be ordered to remove the negative credit history from all credit reporting agencies and any other public record.

52. Plaintiff demands any other relief, including punitive damages, that this Honorable court deems just and equitable.

## **COUNTS and DEMAND AGAINST SHERYL LUPO**

### COUNT I
### MISREPRSENTATION/FRAUD

53. The allegations of paragraph 1-52 are realleged and incorporated as if fully set forth herein.

54. To prove misrepresentation, first there must be a misrepresentation of a material fact. By continuously forging Plaintiff's name to a credit card application and related paperwork the Defendant misrepresented that the Plaintiff was agreeing to the credit card and credit card terms.

55. Second, there must be scienter. Scienter means the defendant knew or believed the statement was false or that there was no basis for that statement when she made the statement. The Defendant knew she was forging the Plaintiff's name to the credit card application, and the Transfer of Responsibility Statement.

56. Third, there must be intent to induce the Plaintiff to act or refrain from acting in reliance upon the misrepresentation. In the present case the Defendant intended that both the Defendant BankAmerica Corporation and the Plaintiff rely on the misrepresentation by attempting to induce Plaintiff to pay for charges made on the credit card and to induce Defendant BankAmerica Corporation to grant the credit card in the first place.

57. The Plaintiff and Defendant BankAmerica Corporation did rely on the misrepresentation and their reliance was justifiable.

58. The Plaintiff has suffered damages in that his credit history and rating has been impugned and he has incurred substantial costs in prosecuting this action.

59. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT II
## BREACH OF CONTRACT

60. The allegations of paragraph 1-59 are realleged and incorporated as if fully set forth herein.

61. The Defendant signed a contract in the form of a Marital Settlement Agreement in the State of California.

62. Massachusetts gives full faith and credit to all contracts that are valid and enforceable.

63. In that contract the Defendant agreed to take responsibility for all debt she incurred. In that contract and underlying documentation she agreed that the BankAmerica Corporation debt was hers.

64. Since that time Defendant has failed to make good on that covenant and is in material breach of contract.

65. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66. The allegations of paragraph 1-65 are realleged and incorporated as if fully set forth herein.

67. To prove intentional infliction of emotional distress, first there must be an act by the Defendant amounting to extreme and outrageous conduct. In Agis v. Howard Johnson Co., 371 Mass. 140, 145- 146 (1976), quoting from Alcorn v. Ambro Engr., Inc., 2 Cal.3d 493, 498 (1970) the court held that spreading of deliberately false statements constitutes extreme and outrageous conduct.

68. By continuously forging Plaintiff's name to a credit card application and related paperwork the Defendant's conduct, under <u>Agis v. Howard Johnson Co.</u> raises to the level of extreme and outrageous conduct.

69. Second, there must be intent. The Defendant knew and intended to forge the Plaintiff's name to the credit card application, and the Transfer of Responsibility Statement.

70. Finally there must be causation and damages. The Plaintiff has clearly suffered sever emotional distress as a result of Defendant's actions. Plaintiff's very credit history has been impugned. Plaintiff has had to deal with legal issues as a result of Defendant's behavior. Plaintiff's ability to concentrate and focus has been severely affected because of Defendant's actions and he has suffered economic as well as psychological harm.

71. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT IV
## VIOLATION OF 18 USC Chapter 96, *et seq* - "RICO"

72. The allegations of paragraph 1-71 are realleged and incorporated as if fully set forth herein.

73. In order to make a prima facie case for RICO violations the Plaintiff must allege four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). "Racketeering activity" means any act that violates one of the federal laws specified in the RICO statute, see 18 U.S.C. § 1961(1), including the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. At least two acts of racketeering activity must occur within ten years of each other to constitute a "pattern." Id. § 1961(5). Sheryl Lupo through her long-term, continuous use of the mails to

perpetrate fraud and forgery against the Plaintiff and against BankAmerica Corporation has violated the letter and spirit of RICO and thus is in violation of said statute.

74. WHEREFORE, under 18 USC 1963, the Defendant is liable to Plaintiff for treble damages, interest, plus costs of suit, including reasonable attorney's fees.

## DEMANDS

75. Plaintiff demands Trial by Jury on each Claim herein.

76. Plaintiff demands that the Defendant Sheryl Lupo indemnify the Plaintiff against any monies owed to BankAmerica Corporation.

77. Plaintiff demands that the Defendant Sheryl Lupo be ordered to pay BankAmerica Corporation monies owed per her contract with BankAmerica Corporation.

78. Plaintiff demands that the Defendant Sheryl Lupo be ordered to pay reasonable attorney's fees of Plaintiff for the cost of bringing this action.

79. Plaintiff demands any other relief, including punitive damages that this Honorable court deems just and equitable.

Respectfully Submitted,
Van A. Lupo
By His Counsel

*Jill Shedd*
Jill C. Shedd
BBO 652488

Law Office of Jill Shedd & Associates, P.C.
430 Franklin Village Drive
#212
Franklin, MA. 02038
508-720-9267

DATED: 10/26/05