# Exhibit A
## (Part 2 of 4)

6. On or about September 9, 1992, the Bank opened a Visa Credit Card Account for Sheryl L. Lupo and/or Van A. Lupo, Account Number 4356-1700-0004-3854. In connection therewith, Mr. Lupo agreed to be bound by the terms and conditions of the Cardholder Agreement. (*See* Exhibit 2.)

7. On or about December 19, 1997, the Bank offered Sheryl Lupo and Van Lupo a "Platinum Priority Card Upgrade" which Sheryl Lupo prepared and sent to the Bank on their behalf. This resulted in the Lupo's account being upgraded to a Platinum Account, Account Number 4427-1000-0187-0265 ("Visa Platinum Account"). A copy of the Upgrade Form is attached hereto as Exhibit 3.

8. On May 2, 1998, May 23, 1998, December 3, 1998, April 5, 1999, and June 9, 1999, Mr. Lupo signed checks drawn on the joint checking account with Sheryl Lupo, and made payments to the account. The June 1999 credit card statement identified Mr. Lupo as the co-holder of the account with Sheryl Lupo. A copy of the May 2, 1998 cancelled check and corresponding Account Statement are attached hereto as Exhibit 4.

9. Prior to March 2000, Mr. Lupo made approximately $165,000 per year as a computer engineer.

10. On or about June 15, 2000, Mr. Lupo and Sheryl Lupo made their last payment on the Visa Platinum Account by a check in the sum of $150.

11. On information and belief, on or about August 9, 2000, Mr. Lupo executed a document entitled, "Transfer of Responsibility Form (Part 1 and Part 2)." A copy of the Transfer of Responsibility Form is attached hereto as Exhibit 5. Under the Transfer of

4028790v2

Responsibility Form, Mr. Lupo acknowledges liability to the Bank under the Cardholder Agreement and Visa Platinum Account.

12. On or about September 5, 2000, Van Lupo filed a Petition for Divorce against Sheryl Lupo in the Probate Court for Orange County, California.

13. On information and belief, as of November 10, 2000, the balance on the Lupo's Visa Platinum Account was $7,623.49. A copy of the November 10, 2000 Account Statement is attached as Exhibit 6.

14. Under the terms of the Cardholder Agreement and Account Statements, the Bank extended credit to Mr. Lupo and Sheryl Lupo and in exchange, they were required to make all payments on the Visa Platinum Account as agreed. (*See* Exhibit 2.)

15. The Bank mailed properly addressed monthly Account Statements to Mr. Lupo and Sheryl Lupo requesting that they contact the Bank and make arrangements to pay the debt then due and owing. Neither Mr. Lupo nor Sheryl Lupo contacted the Bank in response (i) to the Account Statements which showed the amounts past due, or (ii) to telephone calls from the Bank.

16. Mr. Lupo obtained a divorce from Sheryl Lupo on July 29, 2002 but remained obligated under the Cardholder Agreement and Visa Platinum Account to the Bank.

17. Mr. Lupo has breached the Cardholder Agreement and Visa Platinum Account with the Bank by failing to make payments as required, and he has further defaulted by failing and refusing to pay the principal balance due of $15,927.30 as of November 28, 2004, plus interest, accruing interest, late charges, costs and attorneys' fees.

18. Mr. Lupo owes the Bank a sum to be assessed and determined at trial plus interest, costs, and attorneys' fees.

### Count II
### (vs. Mr. Lupo for Money Had and Received)

19. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 18 of the Amended Counterclaim and incorporates them by reference as if separately set forth herein.

20. The Bank extended credits and funds for the benefit of Mr. Lupo and Sheryl Lupo to purchase various goods and services for their benefit. (*See* Exhibits 1 and 4.)

21. The Bank has made demand upon Mr. Lupo for re-payment of the sums owed by Mr. Lupo and Sheryl Lupo but Mr. Lupo has failed and refused, and continues to refuse to make payment of the amounts owed and advanced to him under the Cardholder Agreement and Platinum Visa Account.

22. Mr. Lupo owes the Bank, in equity, a sum to be assessed and determined at trial, plus interest, accruing interest and costs.

### Count III
### (vs. Mr. Lupo for Unjust Enrichment)

23. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 22 of the Amended Counterclaim and incorporates them by reference as if separately set forth herein.

24. The Bank extended credit and funds to Mr. Lupo and Sheryl Lupo in the principal sum of approximately $6,599.41, as of the time of the charge-off of the account on January 10, 2001, Mr. Lupo has failed and refused to repay the sums due and owing to

22

the Bank, and the Bank has suffered additional economic harm from the loss of use of such funds.

25. Mr. Lupo has been unjustly enriched and Mr. Lupo owes the Bank, in equity, a sum to be assessed and determined at trial, plus interest and costs.

### Count IV
### (vs. Mr. Lupo under M.G.L. ch. 214, §3(6) to Reach and Apply Funds Owed to Sheryl Lupo)

26. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1-25 of the Amended Counterclaim and incorporates them by reference as if separately set forth herein.

27. On information and belief, pursuant to Section 2.01 of the Marital Settlement Agreement filed with the Probate Court on or about July 8, 2002, Mr. Lupo, "… [] will pay to [Sheryl Lupo] for spousal support the sum of $3,000.00 per month, payable in advance, on or before the fifth day of each month, commencing on March 1, 2002 and until either party's death, the remarriage of [Sheryl Lupo] or modification or termination by further Court Order whichever occurs first." A copy of the Marital Settlement Agreement is attached hereto as Exhibit 7.

28. On information and belief, only if self-employed, Mr. Lupo was obligated to pay bi-monthly Sheryl Lupo, "thirty percent (30%)" of all gross taxable self-employment income (gross receipts less reasonable business expenses in excess of $5,006.67 per month) ("excess income") up to payment of $3,000 per month to respondent/wife."

29. On information and belief, (i) the July 8, 2002 Divorce Decree has not been amended to reduce the $3,000 monthly alimony payment due from Mr. Lupo to Sheryl Lupo, and (ii) Mr. Lupo is not self-employed.

23

30. On information and belief, Mr. Lupo has only made monthly payments of $500 per month to Sheryl Lupo since July 29, 2002, and may owe Sheryl Lupo a sum up to $102,500 plus interest through December 31, 2005, which represents forty-one (41) months of the balance due per month of $2,500.

31. On information and belief, Mr. Lupo is in possession of goods, effects or credits of Sheryl Lupo in a sum up to $102,500 plus interest which can be used to pay Sheryl Lupo's obligations to the Bank.

32. Pursuant to Mass. Gen Laws Ch. 214, §3(6), the Bank is entitled to reach and apply the goods, effects and credits of Sheryl Lupo standing in the hands of Mr. Lupo as security for a judgment against Sheryl Lupo which cannot be attached at law.

33. Pursuant to Mass. Gen Laws Ch. 214, §3(6), the Bank is entitled to injunctive relief to enjoin and restrain Mr. Lupo and his agents, servants, and employees, and attorneys from disposing, secreting, concealing or otherwise disposing of the funds, on information and belief, which are due and owing to Sheryl Lupo until further Order of the Court.

### Count V
### (vs. Mr. Lupo for Injunctive Relief)

34. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 33 of the Amended Counterclaim and incorporates them by reference as if separately set forth herein.

35. Sheryl Lupo has defaulted under the terms of the Visa Platinum Account and the Cardholder Agreement, as amended, by her failure to pay the Bank as agreed.

36. On information and belief, Mr. Lupo is in possession of funds due and owing of Sheryl Lupo in a sum up to at least $102,500 plus interest.

4028790v2

37. On information and belief, Sheryl Lupo does not intend to use the funds or assets due and owing from Mr. Lupo to pay her obligations to the Bank as set forth herein.

38. The Bank is informed, believes, therefore avers that it has a likelihood of success on the merits in its case against Sheryl Lupo, and Sheryl Lupo does not have insurance or other assets available to satisfy her obligations to the Bank, that the Bank cannot attach at law the funds or assets of Sheryl Lupo as due and owing from Mr. Lupo, and that injunctive relief, is prayed for herein, is reasonable and necessary as security for Sheryl Lupo's obligations to the Bank.

39. In light of the alleged acts and conduct of Sheryl Lupo, which includes a default under the Cardholder Agreement, as amended, and Visa Platinum Account, the Bank is informed, believes, and therefore avers that unless Sheryl Lupo and Mr. Lupo are enjoined and restrained as prayed for herein, there is a reasonable likelihood that they will transfer, assign, encumber, pledge, or conceal the assets of Sheryl Lupo which will cause the Bank irreparable harm.

### Cross-claim

The Cross-claim Plaintiff, Bank of America, N.A., (USA) ("Bank"), brings this Cross-claim against the Cross-claim Defendant, Sheryl Lupo ("Sheryl"), for breach of the Cardholder Agreement and Visa Platinum Account, unjust enrichment, money had and received, and to reach and apply funds or assets in the hands of Mr. Van Lupo which are due and owing to Sheryl Lupo.

### Parties

1. The Cross-claim Plaintiff, Bank of America, N.A. (USA), is a duly organized national credit card company with a place of business in Phoenix, Arizona.

2. The Cross-claim Defendant, Sheryl Lupo, ("Sheryl Lupo"), is an individual residing at 1081 Aloha Drive, Huntington Beach, California.

3. The Counterclaim and Reach and Apply Defendant, Van Lupo, ("Mr. Lupo"), is an individual currently residing at 430 Franklin Village Drive, Franklin, Massachusetts.

### Count I
### (vs. Sheryl Lupo for Breach of Cardholder Agreement and Visa Platinum Account)

4. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 3 of the Cross-claim and Paragraphs 1 through 39 of the Counterclaim and incorporates them by reference as if separately set forth herein.

5. On or about July 28, 1989, Van Lupo and Sheryl Lupo married, and thereafter lived in Huntington Beach, California.

6. On or about September 9, 1992, the Bank opened a Visa Credit Card Account for Sheryl L. Lupo and/or Van A. Lupo, Account Number 4356-1700-0004-3854.

7. Sheryl Lupo executed checks drawn on a joint checking account with Mr. Lupo and made payments to the Bank on the Visa Credit Card account. The June 1999 Account Statement identifies Mr. Lupo as the co-holder of the account with Sheryl Lupo. (*See* Exhibit 3.)

8. On or about December 19, 1997, the Bank offered Sheryl Lupo and Van Lupo a "Platinum Priority Card Upgrade" which Sheryl Lupo prepared and sent to the Bank on their behalf. This resulted in the Lupo's account being upgraded to a Platinum Account, Account Number 4427-1000-0187-0265 ("Platinum Visa Account"). (*See* Exhibit 3.)

26

4028790v2

9. On or about September 5, 2000, Van Lupo filed a Petition for Divorce against Sheryl Lupo in the Probate Court for Orange County, California.

10. On information and belief, as of November 10, 2000, the balance on the Visa Platinum Account was $7,623.49, (*see* Exhibit 6), and the Lupos last made a payment in the sum of $150 on June 12, 2000.

11. Under the terms of the Cardholder Agreement and Platinum Visa Account, the Bank extended credit to Mr. Lupo and Sheryl Lupo and in exchange, they were required to make all payments to the Bank as agreed. (*See* Exhibit 2.)

12. Mr. Lupo and Sheryl Lupo remained obligated under the Cardholder Agreement and Visa Platinum Visa Account after the Probate Court entered a Divorce Decree on July 29, 2002.

13. Sheryl Lupo has breached the Cardholder Agreement and Visa Platinum Account with the Bank by failing to make payments as required, and she has further defaulted by failing and refusing to pay the principal balance due of $15,927.30 as of November 28, 2004, plus interest, accruing interest, late charges, costs and attorneys' fees.

14. Sheryl Lupo owes the Bank a sum to be assessed and determined at trial plus interest, costs, and attorneys' fees.

### Count II
### (vs. Sheryl Lupo for Money Had and Received)

15. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 14 of the Cross-claim and incorporates them by reference as if separately set forth herein.

27

4028790v2

16. The Bank extended credits and funds for the benefit of Mr. Lupo and Sheryl Lupo to purchase various goods and services for their benefit. (*See* Exhibits 1 and 3.)

17. On October 28, 2005, the Bank made demand upon Sheryl Lupo for re-payment of the sums owed but she has failed and refused, and continues to refuse to make payment of the amounts owed and advanced to her under the Cardholder Agreement and Visa Platinum Account. A copy of the October 28, 2005 Demand Letter is attached hereto as Exhibit 8.

18. Sheryl Lupo owes the Bank, in equity, a sum to be assessed and determined at trial, plus interest, accruing interest and costs.

### Count III
### (vs. Sheryl Lupo for Unjust Enrichment)

19. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 18 of the Cross-claim and incorporates them by reference as if separately set forth herein.

20. The Bank extended credit and funds to Mr. Lupo and Sheryl Lupo in the principal sum of approximately $6,599.41, as of the time of charge-off on January 10, 2001, Sheryl Lupo has failed and refused to repay the sums due and owing to the Bank, and the Bank has suffered additional economic harm from the loss of use of such funds.

21. Sheryl Lupo has been unjustly enriched and she owes the Bank, in equity, a sum to be assessed and determined at trial, plus interest and costs.

### Count IV
### (vs. Sheryl Lupo to Reach and Apply Funds Owed by Mr. Lupo)

22. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 21 of the Cross-claim and Paragraphs 1 through 39 of the Counterclaim and incorporates them by reference as if separately set forth herein.

23. On information and belief and pursuant to the Marital Settlement Agreement, Mr. Lupo is obligated to pay Sheryl Lupo lifetime alimony in the sum of $3,000 per month beginning on or about July 29, 2002.

24. On information and belief, Mr. Lupo has only made monthly alimony payments of $500 since July 2002, and may owe Sheryl Lupo a sum of up to $102,500 plus interest which represents 41 payments of the balance due each month of $2,500 from July 2002 through December 31, 2005.

25. Pursuant to Mass. Gen. Laws Ch. 214, §3(6), the Bank is entitled to reach and apply any funds due and owing by Mr. Lupo to Sheryl Lupo in satisfaction of her obligations to the Bank as they cannot be attached at law.

26. Pursuant to Mass. Gen. Laws Ch. 214, §3(6), the Bank is entitled to injunctive relief to enjoin and restrain Sheryl Lupo and her agents, servant, employees and attorneys from dissipating, assigning, concealing, transferring or conveying any of the funds or assets due and owing from Mr. Lupo until further Order of the Court.

### Count V
### (vs. Sheryl Lupo for Injunctive Relief)

27. The Bank re-avers and re-alleges each of the allegations contained in Paragraphs 1 through 26 of the Cross-claim and Paragraphs 1 through 39 of the Counterclaim incorporates them by reference as if separately set forth herein.

28. Sheryl Lupo has defaulted on the terms and conditions of the Visa Platinum Account and the Cardholder Agreement, as amended, by her failure to pay the Bank, as agreed.

29. On information and belief, Sheryl Lupo does not intend to use the money owed to her by Mr. Lupo or her future monthly alimony payments which are due and owing from Mr. Lupo, as set forth herein, to satisfy her obligations to the Bank.

30. The Bank is informed, believes, therefore avers, that it has a likelihood of success based on the merits of this case against Sheryl Lupo, that Sheryl Lupo does not have insurance or assets available to satisfy her obligations to the Bank, that the Bank cannot attach at law the assets or interests of Sheryl Lupo as due and owing from Van Lupo, and that injunctive relief, as prayed for herein, is reasonable and necessary as security for her obligations to the Bank.

31. In light of the alleged acts and conduct of Sheryl Lupo, which includes a default under the Cardholder Agreement, as amended, and Visa Platinum Account the Bank is informed, believes and therefore, avers that unless Sheryl Lupo and Mr. Lupo are enjoined and restrained as prayed for herein, there is a reasonable likelihood that they will assign, transfer, encumber, pledge, or conceal the assets of Sheryl Lupo which would cause the Bank irreparable harm.

WHEREFORE, the Defendant, Cross-Claim Plaintiff and Counterclaim Plaintiff, Bank of America, N.A. (USA), moves this Court as follows:

1. That this Court enter an Order under Count V of the Cross-claim and Count V of the Counterclaim preliminarily enjoining and restraining the Counterclaim Defendant, Van A. Lupo, and the Cross-claim Defendant, Sheryl Lupo, and their

respective agents, servants, employees, attorneys, trustees, beneficiaries, officers, directors, pledgees, assignees, nominees, accountants, successors, each and everyone of them from selling, assigning, transferring, alienating, conveying, pledging, hypothecating, encumbering, or in any other manner disposing of or diminishing of or effecting the assets of Sheryl Lupo below the sum of $100,000, and further that they be enjoined and restrained from making any payments to Sheryl Lupo directly or indirectly, until further Order of the Court.

2. That this Court dismiss the Amended Complaint of the Plaintiff, Van A. Lupo, against the Defendant, Bank of America, N.A. (USA), under Counts I, II, III, IV and V of the Amended Complaint;

3. That this Court find for the Counterclaim Plaintiff, Bank of America, N.A. (USA), and against the Counterclaim/Reach and Apply Defendant, Van A. Lupo, under Counts I, II, III, IV and V of the Amended Counterclaim in an amount to be assessed and determined at trial, plus interest, costs and attorneys' fees;

4. That this Court find for the Cross-claim Plaintiff, Bank of America, N.A. (USA), and against the Cross-claim Defendant, Sheryl Lupo, under Counts I, II, III, IV and V of the Cross-claim in an amount to be assessed and determined at trial plus interest, costs and attorneys fees.

5. That this Court continue the Preliminary Injunction in Prayer one as a permanent injunction until the Counterclaim/Reach and Apply Defendant, Van Lupo, and Cross-claim Defendant, Sheryl Lupo, pays in full the Counterclaim and Cross-claim Plaintiffs Bank of America, N.A. (USA).

4028790v2

6. That this Court enter an Order under Count IV of the and Counterclaim and Count IV of the Cross-claim permitting the Cross-claim Plaintiff, Bank of America, N.A. (USA), to reach and apply under Mass. Gen. Laws Ch. 214, §3(6) goods, effects, credits, funds or assets in the possession, custody and/or control of the Counterclaim/Reach and Apply Defendant, Van Lupo, in satisfaction of Bank of America, N.A. (USA)'s Judgment and Execution against Sheryl Lupo.

7. That this Court enters such other relief that it deems just and proper.

**DEMAND FOR JURY TRIAL**

The Defendant, Bank of America, N.A. (USA), demands a jury trial.

BANK OF AMERICA, N.A. (USA)
By its attorneys,

_____
E. Macey Russell, P.C. (BBO #542371)
Christopher A. Edwards (BBO #640758)
Choate, Hall & Stewart, LLP
Two International Place
Boston, Massachusetts 02110
Tel: (617) 248-5000

Dated: March \_\_, 2006

4028790v2

I, Mary Lee Trevino, being duly sworn state on oath as follows that the facts are alleged in the Counterclaim and Cross-claim are true based upon the records of Bank of America, N.A. (USA) as they are kept in the usual and ordinary course of its business, and as to those statements made on information and belief, we believe them to be true.

_____
Mary Lee Trevino
Assistant Vice President
Bank of America, N.A. (USA)

COMMONWEALTH OF MASSACHUSETTS

_____, ss                                                                                  _____, 2006

Before me, the undersigned notary public, personally appeared the above named Mary Lee Trevino, whose name is signed on the preceding document, and such person acknowledged to me that she signed such document voluntarily, for its stated purpose. The identity of such person was proved to me through satisfactory evidence of identification, which was [_] photographic identification with signature issued by a federal or state governmental agency, [_] oath or affirmation of a credible witness, or [_] personal knowledge of the undersigned.

_____
Notary Public

My Commission Expires:

4028790v2