## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VAN A. LUPO,<br>Plaintiff | ) ) ) | |
| v. | ) ) | C.A. Number 04-40202-FDS |
| BANKAMERICA CORPORATION &<br>SHERYL LUPO<br>Defendants | ) ) ) ) | |

## AMENDED COMPLAINT

### Introduction

1. Plaintiff /Consumer, Van A. Lupo, brings this action for compensatory, exemplary, and punitive damages against Defendant pursuant to Defendant's violations of the Consumer Credit Protection Act, 15 U.S.C. §1601 *et seq* (hereinafter, "CCPA"); the Massachusetts Consumer Credit Disclosure statutes, M.G.L. c. 140D *et seq* (hereinafter, "Credit Disclosure Statues"); the Division of Banks and Loans Regulatory Code promulgated by the commissioner of Banking for the Commonwealth of Massachusetts, 209 CMR 32.00 *et seq* (hereinafter, "Disclosure Regulations"); and Massachusetts Consumer Protection Act, M.G.L. C 93A (hereinafter, "Ch. 93A") due to

   a. Defendant's blatant, unfair, and deceptive refusal to disclose credit card information, namely the signature page of the application, requested by Plaintiff;

   b. Failure to remove reported negative credit history from the three major credit reporting companies' public records;

   c. And refusal to meet its burden of proof to show that the credit use was authorized.

2. Plaintiff also asserts common law claims for relief against said Defendant.

3. BankAmerica Corporation counter-claimed against Plaintiff with the following:

    a.  Breach of Credit Card Agreement claim

    b.  A "For Money had and Received" claim

    c.  An Unjust Enrichment claim

4. Plaintiff, upon being counter-claimed against, and upon learning that Sheryl Lupo had not filed for Federal Bankruptcy Protection amended the Pleadings to add Sheryl Lupo as a Defendant.

### Jurisdiction and Venue

5. This Court's Jurisdiction arises under 15 U.S.C. §1601(d) and 28 U.S.C. §1331. This Court has Supplemental Jurisdiction to hear and adjudicate Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(c).

### Parties

7. Plaintiff Van A. Lupo is a natural person and individual who resides in Hopedale, Massachusetts, Worcester County.

8. Defendant BankAmerica Corporation is a Corporation incorporated in the State of Delaware. At all times relevant to this Complaint it was engaged and still is engaged in substantial business in the Commonwealth of Massachusetts.

9. Defendant Sheryl Lupo is a natural person and individual who resides in Huntington Beach, California, Orange County.

### **Factual Allegations**

10. A person reputing to be with BankAmerica Corporation and claiming that Mr. Lupo had an outstanding balance with BankAmerica from a credit card issued in September of 1992 called plaintiff Van A. Lupo on his cellular phone in the fall of 2003. Up until that point, Mr. Lupo was never aware of any credit card, never mind a balance, with BankAmerica Corporation.

11. Mr. Lupo informed that person that he was divorced and that his ex-wife was responsible for much of the credit card debt, and perhaps BankAmerica Corporation should be calling her. The BankAmerica Corporation representative noted that the credit card was allegedly a joint account.

12. Mr. Lupo requested that he be sent an original copy of the signature page of the credit card application to verify that it was indeed his signature. No such signature page was forthcoming.

13. In December of 2003 Mr. Lupo requested a credit report from Trans Union and received said credit report.

14. Mr. Lupo noticed that BankAmerica Corporation had reported this account to Trans Union as "charged off as bad debt" (attached hereto as Exhibit A)

15. Mr. Lupo disputed the report from BankAmerica Corporation to Trans Union, and in February of 2004, Trans Union reported back to Mr. Lupo that the BankAmerica Corporation report was "verified" (attached hereto as Exhibit B).

16. When Mr. Lupo learned that BankAmerica Corporation was continuing to report the credit card balance on his credit report, he attempted to call BankAmerica Corporation to resolve this matter.

17. At that time, Mr. Lupo was informed that an Attorney Eskoner, a professional debt collector, was handling the BankAmerica Corporation account.

18. Mr. Lupo spent the next few weeks attempting to contact Attorney Eskoner, and finally learned that Attorney Eskoner's firm had closed the account and returned it to BankAmerica Corporation on March 22, 2004.

19. Mr. Lupo then retained counsel. On May 27, 2004, present counsel, called BankAmerica Corporation's credit card department and spoke with a Ms. Laura Taffea [sic]. Ms Taffea [sic] told present counsel to send a formal letter of dispute to BankAmerica Corporation's Credit Dispute Bureau.

20. On May 27, 2004, present counsel sent a letter, via facsimile and certified mail to BankAmerica Corporation Credit Dispute Bureau requesting that they produce the signature card. (Attached hereto as Exhibit C).

21. As of July 23, 2004 BankAmerica Corporation was still reporting this credit card debt as "charged off" (Experian credit report attached hereto as Exhibit D).

22. As of this date, BankAmerica Corporation has failed to produce the signature card or acknowledge the letter.

23. In September of 2004 the Plaintiff filed this present case. Under the federal court rules the Plaintiff first attempted to serve Bank of America with the standard waiver of service forms (true copies of the Waiver of Service forms are attached hereto as Exhibit A1). Per usual, Bank of America did not respond. Thus, the Plaintiff was forced to serve Bank of America via a standard process server in May 2005.

24. BankAmerica Corporation responded to this Complaint with various documents and information. See Exhibits 1-6 from Defendant BankAmerica Corporation's Answer and Counter-claim herein attached at Exhibit E.

25. In the documents provided it became clear that Sheryl Lupo had forged the Plaintiff's name on at least one occasion, namely the Transfer of Responsibility form.

26. Sheryl Lupo also listed the debt owed to BankAmerica Corporation as her debt on a duly filed Declaration of Disclosure/Schedule of Assets and Debts with the Superior Court of California Orange County. See Declaration of Disclosure/Schedule of Assets and Debts attached hereto as Exhibit F.

27. The Marital Settlement Agreement entered into by the parties in the State of California on July 8, 2002 clearly states that Sheryl Lupo is responsible for all debt she incurred and there is language which indemnifies the Plaintiff from harm resulting in her breach of that responsibility. See Marital Settlement Agreement of July 8, 2002 attached hereto as Exhibit G.

28. The Plaintiff and the Defendant Bank of America Corporation assented to a Motion to Join another Defendant, namely Sheryl Lupo, said Motion was granted by this Honorable Court on February 17, 2006.

29. The Defendant, Bank of America then answered the Amended Complaint on March 22, 2006 with new counts against the Plaintiff. Specifically new counts were added. A new count to reach and apply funds the Bank alleges are due and owing the co-defendant Sheryl Lupo and adds those counts reputedly based on "information, belief and knowledge" despite knowing facts that are completely contradictory to that position and a second new count for injunctive relief based on the reach and apply count. The Bank also filed initial counts against the co-

defendant Sheryl Lupo. The Plaintiff filed and Answer to the new counts contained in Bank of America's Amended Answer to the Amended Complaint.

30. The Plaintiff obtained his most recent credit report, on May 16, 2006 from TransUnion. Said credit report on the first page that lists account information clearly and prominently lists the Bank of America credit card account, the account at the heart of this present lawsuit, as "charge off as bad debt" with a last update of June 2005 (a true copy of said credit report is attached hereto as Exhibit H). This is despite the Bank's statements in its Amended Answer in paragraph 18, as well as answers to discovery (Response 16 to Plaintiff's First Set of Interrogatories) that as of October 29, 2004 it has notified the Credit Bureaus that this matter is "in dispute".

31. Additionally, the Plaintiff, after review of documents produced by the Bank in discovery, has found that the Bank was aware of the Plaintiff's dispute over the *alleged* account well before the Bank reputedly reported it as disputed. Furthermore, the Bank admits through discovery that it does not have a signed contract nor can it produce one, and also admits that it does not have any charge slips showing the Plaintiff's signature on any credit card purchases (true copies of responses to discovery and documents produced by the Bank are attached hereto as Exhibits I - K)

## COUNTS and DEMAND AGAINST BANK OF AMERICA CORPORATION

### COUNT I

### VIOLATIONS OF THE FEDERAL CONSUMER CREDIT PROTECTION ACT
### 15 U.S.C. §1601, *et seq*

32. The allegations of paragraphs 1-30 are realleged and incorporated herein as if fully set forth.

33. At all times relevant to this complaint Plaintiff was a "consumer" within the meaning of 15 U.S.C.§1602(h).

34. The credit at issue here constitutes "credit" within the meaning of 15 U.S.C. §1602(e) and the debt was incurred as a result of credit used on a "credit card" within the meaning of 15 U.S.C. § 1602(k).

35. At all times relevant to this complaint Defendant was a "creditor" within the meaning of 15 U.S.C. §1602(f), to wit, it regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and

36. Defendant violated the Consumer Credit Protection Act in the following respects:

   (a) Defendant violated 15 U.S.C. §1637 by refusing, despite numerous requests by the Plaintiff, to disclose the relevant information, such as the signature page of the application, of the credit card at issue in the present case;

   (b) Defendant violated 15 U.S.C.§1642 by issuing a credit card in the Plaintiff's name without being in response to a request or application from the Plaintiff;

(c) Defendant violated 15 U.S.C.§1643 by shifting the burden of proof to the Plaintiff to prove to the Defendant and the three major credit reporting agencies, that he was not liable for the use of the credit card;

(d) Defendant is in violation of 15 U.S.C. §1611 because it willfully and knowingly failed to provide information which it is required to disclose under the provisions of the federal Consumer Credit Protection Act.

37. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with reasonable attorney's fees.

## COUNT II

## <u>VIOLATIONS OF THE MASSACHUSETTS CONSUMER CREDIT DISCLOSURE ACT</u>
<u>M. G. L. c. 140D *et seq*</u>

38. The allegations of paragraph 1-36 are realleged and incorporated as if fully set forth herein.

39. Defendant is a "Creditor" within the meaning of M.G.L. c. 140D §1

40. Defendant has engaged in the following conduct in violation of the Massachusetts Consumer

Credit Disclosure Act:

    (e) Defendant violated M.G.L. c. 140D §11 by refusing, despite numerous requests by the

       Plaintiff, to disclose the relevant information, such as the signature page of the

       application, of the credit card at issue in the present case;

    (f) Defendant violated M.G.L. c. 140D §25 by issuing a credit card in the Plaintiff's name

       without being in response to a request or application from the Plaintiff;

    (g) Defendant violated M.G.L. c. 140D §26 by shifting the burden of proof to the Plaintiff to

       prove to the Defendant and the three major credit reporting agencies, that he was not

       liable for the use of the credit card;

    (h) Defendant is in violation of M.G.L. c. 140D §31 because it willfully and knowingly

       failed to provide information that it is required to disclose under the provisions of the

       Massachusetts Consumer Credit Disclosure Act.

41. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with

reasonable attorney's fees.

## COUNT III

## VIOLATION OF DIVISION OF BANKS AND LOANS REGULATORY CODE
## 209 C.M.R. §32.00, *et seq*

42. The allegations of paragraph 1-40 are realleged and incorporated as if fully set forth herein.

43. Defendant has engaged in the following conduct in violation of the Division of Banks and Loan Agencies Rule, to wit, Defendant violated 209 CMR §32.05A by refusing, despite numerous requests by the Plaintiff, to disclose the relevant information, such as the signature page of the application, of the credit card at issue in the present case;

44. In addition, Defendant violated 209 CMR §32.05A(5)(d) by failing to promptly and fully disclose the information requested by the Plaintiff.

45. WHEREFORE, the Defendant is liable to Plaintiff for the cost of this action, together with reasonable attorney's fees.

## COUNT IV

## VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT
## M.G.L. c. 93A

46. The allegations of paragraph 1-44 are realleged and incorporated as if fully set forth herein.

47. The acts and practices of BankAmerica Corporation, in failing to disclose to Mr. Lupo the information he requested on his alleged credit card use, constitutes an unfair or deceptive act or practice pursuant to Massachusetts General Laws Chapter 93A, §§ 2 and 9.

48. The actions of the defendant described above were performed willfully and knowingly.

49. As a result of the unfair or deceptive acts or practices of the Defendant, the Plaintiff has lost the ability to apply for and receive credit, and has sustained financial burdens in pursuing the relief requested.

50. In May 2004, the Plaintiff, through his attorney, sent to the defendant by certified mail, postage prepaid, a written demand for relief pursuant to M.G.L. c. 93A, § 9, identifying the claimants and reasonably describing the unfair acts or practices relied on and the injuries suffered. A copy of this letter is attached hereto as Exhibit C.

51. As of the date of this Complaint, the Defendant has failed to respond to the letter in any form or manner.

52. WHEREFORE, the Defendant is liable to Plaintiff for damages and the cost of this suit, including reasonable attorney's fees.

## COUNT IV

## **LIBEL**

53. The allegations of paragraph 1-51 are realleged and incorporated as if fully set forth herein.

54. To prove libel, first there must be a statement, in writing or a similarly permanent form, which has the effect of harming the Plaintiff's reputation in the community. By reporting negative credit to the three major credit reporting company, and by knowing that that information would be disseminated to anyone requesting credit information on the Plaintiff, the Defendant made a written statement that had the effect of harming the Plaintiff's reputation.

55. Second, the defamatory statement must also be false and untrue and the Defendant has the burden of proving the truth of the statement as an affirmative defense. The Plaintiff claims that he did not knowingly and willingly sign the signature page on the credit application with the Defendant. The Defendant, despite numerous requests, has failed to produce such proof. Thus the statement to the credit reporting agencies is false and untrue.

56. Third, there must be a publication of the defamatory matter, meaning that at least one person other than the parties to an action for defamation must have been exposed to the defamatory material. By continuously reporting the libelous credit history to the major credit reporting agencies, and hence to all others who request a credit history of the Plaintiff, there has been publication of the defamatory matter.

57. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT V

## <u>VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (FCRA)</u><br><u>15 U.S.C. §1681, *et seq*</u>

58. The allegations of paragraph 1-56 are realleged and incorporated as if fully set forth herein.

59. 15 U.S.C. §1681s-2(b)(1) imposes certain duties on a creditor regarding disputed items on a

consumer's credit report. Specifically, and in brief, 15 U.S.C. §1681s-2 (b)(1) states that the

duties of furnishers of information upon notice of dispute are as follows:

    a.  conduct an investigation with respect to the disputed information;

    b.  review all relevant information provided by the consumer reporting agency;

    c.  report the results of the investigation to the consumer reporting agency;

    d.  if the investigation finds that the information is incomplete or inaccurate, report those

        results to all other consumer reporting agencies to which the person furnished the

        information and that compile and maintain files on consumers on a nationwide basis; and

    e.  if an item of information disputed by a consumer is found to be inaccurate or incomplete

        or <u>cannot be verified</u> after any reinvestigation under paragraph (1), for purposes of

        reporting to a consumer reporting agency only, as appropriate, based on the results of the

        reinvestigation promptly (i) modify that item of information; (ii) delete that item of

        information; or (iii) permanently block the reporting of that item of information.

60. Bank of America has violated the FCRA by failing to conduct a proper investigation into the

Plaintiff's dispute and by failing to modify, delete or permanently block the reporting of that

item of information, despite the Bank's own admission that it is unable to verify that the

Plaintiff signed the credit card application or that he signed any credit card slips purchasing an item using the *alleged* account.

61. 15 U.S.C. §1681n provides for damages where any person or entity who willfully fails to comply with any requirement imposed under the FCRA statute with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages, plus such amount of punitive damages as the court may allow; and costs of the action together with reasonable attorney's fees as determined by the court.

62. Bank of America has willfully failed to comply with the requirements of the FCRA statute as it is clear that despite the present lawsuit, despite the fact that it can not find a signed contract, can not produce any credit card slips that would verify and prove that the plaintiff used the credit card, and despite the fact that it admits that the co-defendant Sheryl Lupo is the primary account holder, is still willfully and knowingly reporting the *alleged* credit card as "charged off as bad debt" on the Plaintiff's most recent credit report of May 16, 2006.

## COUNT VI

### VIOLATIONS OF THE MASSACHUSETTS STATUTES REGARDING CREIDT BUREAU REGULATIONS: M. G. L. c. 93 §54A, M.G.L c. 93 §63, M.G.L. c. 93 §64 and M.G.L. c. 93 §68

63. The allegations of paragraph 1-61 are realleged and incorporated as if fully set forth herein.

64. M.G.L. c. 93 §54A imposes certain duties on a creditor regarding disputed items on a consumer's credit report. Specifically, and in brief, M.G.L. c. 93 54A states that the duties of furnishers of information upon notice of dispute are as follows:

   a.  Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete.

   b.  A person who (1) in the ordinary course of business regularly and on a routine basis furnishes information to one or more consumer reporting agencies about the person's own transactions or experiences with one or more consumers, and (2) determines that information on a specific transaction or experience so provided to a consumer reporting agency is not complete or accurate, shall promptly notify the consumer reporting agency of such determination and provide to the consumer reporting agency any corrections to that information, or any additional information, which is necessary to make the information provided by the person to the consumer reporting agency complete and accurate.

c.  while the completeness or accuracy of any information on a specific transaction or experience furnished by any person to a consumer reporting agency is subject to a continuing bona fide dispute between the affected consumer and that person or creditor, the person or creditor may not furnish the information to any consumer reporting agency without also including a notice that the information is disputed by the consumer; provided further, that no person may report to a consumer reporting agency that a consumer's account is delinquent until said bona fide dispute is resolved pursuant to the federal Fair Credit Billing Act; and

d.  upon receiving notice of a dispute notice pursuant to paragraph (a) of section fifty-eight with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the person that provided the information shall (1) complete an investigation with respect to the disputed information and report to the consumer reporting agency the results of that investigation

65. M.G.L. c. 93 §63 states that any person who furnishes information to any consumer reporting agency, or user of information which <u>willfully</u> fails to comply with any requirement imposed under sections fifty to sixty-two, inclusive, with respect to any consumer shall be liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure along with such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

66. M.G.L. c. 93 §64 states person who furnishes information to any consumer reporting agency, or user of information which is <u>negligent</u> in failing to comply with any requirement imposed

under sections fifty to sixty-two, inclusive, with respect to any consumer shall be liable to
that consumer in an amount equal to the sum of any actual damages sustained by the
consumer as a result of the failure and together with, in the case of any successful action to
enforce any liability under this section, the costs of the action and reasonable attorney's fees
as determined by the court. The remedies provided hereunder shall not be exclusive.

67. Finally, M.G.L. c. 93 §68 states that failure to comply with the provisions of sections fifty
through sixty-seven shall constitute an unfair trade practice under the provisions of M.G.L. c
93A §2(a).

68. Bank of America is continuing to report the *alleged* account as "charge off as bad debt" on
the Plaintiff's credit report as recently as June 2005 and as of May 16, 2006 it is still listed as
such. Bank of America continues to report it as a negative credit history despite the present
lawsuit, despite the fact that it can not find any signed contract, can not produce any credit
card slips that would verify and prove that the plaintiff used the credit card, and despite the
fact that it admits that the co-defendant Sheryl Lupo is the primary account holder. Thus,
Bank of America has, at the very least, acted negligently by continuing to report said
disputed account as "charge off as bad debt, and at the worst has willfully failed to comply
with the requirements of Massachusetts General Law.

# **DEMANDS**

69. Plaintiff demands Trial by Jury on each Claim herein.

70. Plaintiff demands that the Defendant be ordered to remove the negative credit history from all credit reporting agencies and any other public record.

71. Plaintiff demands that the Defendant be ordered to pay Plaintiff's attorney fees for the cost of this action.

72. Plaintiff demands that the Defendant be ordered to pay statutory damages.

73. Plaintiff demands that the Defendant be ordered to pay punitive damages.

74. Plaintiff demands any other relief that this Honorable court deems just and equitable.

## COUNTS and DEMAND AGAINST SHERYL LUPO

### COUNT I

### MISREPRSENTATION/FRAUD

75. The allegations of paragraph 1-52 are realleged and incorporated as if fully set forth herein.

76. To prove misrepresentation, first there must be a misrepresentation of a material fact. By continuously forging Plaintiff's name to a credit card application and related paperwork the Defendant misrepresented that the Plaintiff was agreeing to the credit card and credit card terms.

77. Second, there must be scienter. Scienter means the defendant knew or believed the statement was false or that there was no basis for that statement when she made the statement. The Defendant knew she was forging the Plaintiff's name to the credit card application, and the Transfer of Responsibility Statement.

78. Third, there must be intent to induce the Plaintiff to act or refrain from acting in reliance upon the misrepresentation. In the present case the Defendant intended that both the Defendant BankAmerica Corporation and the Plaintiff rely on the misrepresentation by attempting to induce Plaintiff to pay for charges made on the credit card and to induce Defendant BankAmerica Corporation to grant the credit card in the first place.

79. The Plaintiff and Defendant BankAmerica Corporation did rely on the misrepresentation and their reliance was justifiable.

80. The Plaintiff has suffered damages in that his credit history and rating has been impugned and he has incurred substantial costs in prosecuting this action.

81. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT II

### BREACH OF CONTRACT

82. The allegations of paragraph 1-59 are realleged and incorporated as if fully set forth herein.

83. The Defendant signed a contract in the form of a Marital Settlement Agreement in the State of California.

84. Massachusetts gives full faith and credit to all contracts that are valid and enforceable.

85. In that contract the Defendant agreed to take responsibility for all debt she incurred. In that contract and underlying documentation she agreed that the BankAmerica Corporation debt was hers.

86. Since that time Defendant has failed to make good on that covenant and is in material breach of contract.

87. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of suit, including reasonable attorney's fees.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88. The allegations of paragraph 1-65 are realleged and incorporated as if fully set forth herein.

89. To prove intentional infliction of emotional distress, first there must be an act by the Defendant amounting to extreme and outrageous conduct. In Agis v. Howard Johnson

Co., 371 Mass. 140, 145- 146 (1976), quoting from <u>Alcorn v. Ambro Engr., Inc.</u>, 2 Cal.3d

493, 498 (1970) the court held that spreading of deliberately false statements constitutes

extreme and outrageous conduct.

90. By continuously forging Plaintiff's name to a credit card application and related

paperwork the Defendant's conduct, under <u>Agis v. Howard Johnson Co.</u> raises to the

level of extreme and outrageous conduct.

91. Second, there must be intent. The Defendant knew and intended to forge the Plaintiff's

name to the credit card application, and the Transfer of Responsibility Statement.

92. Finally there must be causation and damages. The Plaintiff has clearly suffered sever

emotional distress as a result of Defendant's actions. Plaintiff's very credit history has

been impugned. Plaintiff has had to deal with legal issues as a result of Defendant's

behavior. Plaintiff's ability to concentrate and focus has been severely affected because

of Defendant's actions and he has suffered economic as well as psychological harm.

93. WHEREFORE, the Defendant is liable to Plaintiff for damages, interest, plus costs of

suit, including reasonable attorney's fees.


## COUNT IV

## <u>VIOLATION OF 18 USC Chapter 96, *et seq* - "RICO"</u>

94. The allegations of paragraph 1-71 are realleged and incorporated as if fully set forth

herein.

95. In order to make a prima facie case for RICO violations the Plaintiff must allege four

elements: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering

activity." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir.

2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). "Racketeering

activity" means any act that violates one of the federal laws specified in the RICO statute,

see 18 U.S.C. § 1961(1), including the mail and wire fraud statutes, 18 U.S.C. §§ 1341

and 1343. At least two acts of racketeering activity must occur within ten years of each

other to constitute a "pattern." Id. § 1961(5). Sheryl Lupo through her long-term,

continuous use of the mails to perpetrate fraud and forgery against the Plaintiff and

against BankAmerica Corporation has violated the letter and spirit of RICO and thus is in

violation of said statute.

96. WHEREFORE, under 18 USC 1963, the Defendant is liable to Plaintiff for treble

damages, interest, plus costs of suit, including reasonable attorney's fees.

## DEMANDS

97. Plaintiff demands Trial by Jury on each Claim herein.

98. Plaintiff demands that the Defendant Sheryl Lupo indemnify the Plaintiff against any

monies owed to BankAmerica Corporation.

99. Plaintiff demands that the Defendant Sheryl Lupo be ordered to pay BankAmerica

Corporation monies owed per her contract with BankAmerica Corporation.

100.     Plaintiff demands that the Defendant Sheryl Lupo be ordered to pay reasonable

attorney's fees of Plaintiff for the cost of bringing this action.

101.     Plaintiff demands any other relief, including punitive damages that this Honorable

court deems just and equitable.

Respectfully Submitted,
Van A. Lupo
By His Counsel


*Jill Shedd*

Jill C. Shedd
BBO 652488

Law Office of Jill Shedd & Associates, P.C.
430 Franklin Village Drive
#212
Franklin, MA.  02038
508-720-9267                                          DATED:        05/23/2006