# EXHIBIT G

1287

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Stephen C. Hosford, Esq.<br>HOSFORD & HOSFORD, INC.<br>250 West Main Street, #101<br><br>Tustin, CA  92780<br>TELEPHONE NO.: (714) 730-8202    FAX NO.: (714) 730-1959<br>ATTORNEY FOR (Name): SHERYL L. LUPO | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>LAMOREAUX JUSTICE CENTER<br><br>JUL 0 8 2002<br><br>ALAN SLATER, Clerk of the Court<br>BY K. LEWIS |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS: Post Office Box 14170
CITY AND ZIP CODE: Orange, CA  92613-1570
BRANCH NAME: Family Law Division

MARRIAGE OF
PETITIONER: VAN A. LUPO

RESPONDENT: SHERYL L. LUPO

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] Dissolution    [ ] Legal separation    [ ] Nullity<br>[ ] Status only<br>[ ] Reserving jurisdiction over termination of marital status<br>[ ] Judgment on reserved issues<br>Date marital status ends: JUL 0 8 2002 | 00D 008 449 |

1. ___ This judgment ___ contains personal conduct restraining orders ___ modifies existing restraining orders.
   The restraining orders are contained on page(s) ___ of attachment. They expire on (date):

2. This proceeding was heard as follows: [X] default or uncontested ___ by declaration under Fam. Code, § 2336
   ___ contested
   a. Date: JUL 0 8 2002    Dept.: Cldc    Rm.:
   b. Judicial officer (name): Richard Vogel
   c. ___ Petitioner present in court    ___ Temporary judge
   d. ___ Respondent present in court    ___ Attorney present in court (name):
   e. ___ Claimant present in court (name):    ___ Attorney present in court (name):
   f. ___ Other (specify name):    ___ Attorney present in court (name):

3. The court acquired jurisdiction of the respondent on (date): 7/18/01
   ___ Respondent was served with process    [X] Respondent appeared

4. THE COURT ORDERS, GOOD CAUSE APPEARING:
   a. [X] Judgment of dissolution be entered. Marital status is terminated and the parties are restored to the status of unmarried persons
      (1) [X] on the following date (specify): JUL 0 8 2002
      (2) ___ on a date to be determined on noticed motion of either party or on stipulation.
   b. ___ Judgment of legal separation be entered.
   c. ___ Judgment of nullity be entered. The parties are declared to be unmarried persons on the ground of (specify):

   d. ___ This judgment shall be entered nunc pro tunc as of (date):
   e. ___ Judgment on reserved issues.
   f. ___ Wife's ___ Husband's former name be restored (specify):
   g. ___ Jurisdiction is reserved over all other issues and all present orders remain in effect except as provided below.
   h. ___ This judgment contains provisions for child support or family support. Both parties shall complete and file with the court a *Child Support Case Registry Form* (form 1285.92) within 10 days of the date of this judgment. The parents shall notify the court of any change in the information submitted within 10 days of the change by filing an updated form. The forms *Notice of Rights and Responsibilities* (form 1285.78) and *Information Sheet on Changing a Child Support Order* (form 1285.79) are attached.

(Continued on reverse)

JUDGMENT
(Family Law)

Legal Solutions

Family Code,
§§ 2340, 2343, 2346

| MARRIAGE OF *(last name, first name of parties)*: MARRIAGE OF LUPO, VAN & SHERYL | CASE NUMBER: 00D 008 449 |
|---|---|

4. i. ☒ A marital settlement agreement between the parties is attached.

  j. ☐ A written stipulation for judgment between the parties is attached.

  k. ☐ Child custody and visitation is ordered as
     set forth in the attached
     - ☐ Marital settlement agreement, stipulation for judgment, or other written agreement.
     - ☐ *Child Custody and Visitation Order Attachment* (form 1296.31A)
     - ☐ Other *(specify)*:

  l. ☐ Child support is ordered as set forth in
     the attached
     - ☐ Marital settlement agreement, stipulation for judgment, or other written agreement.
     - ☐ *Child Support Information and Order Attachment* (form 1296.31B)
     - ☐ *Non-Guideline Child Support Findings Attachment* (form 1296.31B(1))
     - ☐ *Stipulation to Establish or Modify Child Support Order* (form 1285.27)
     - ☐ Other *(specify)*:

  m. ☒ Spousal support is ordered as set forth in the
     attached
     - ☒ Marital settlement agreement, stipulation for judgment, or other written agreement.
     - ☐ *Spousal or Family Support Order Attachment* (form 1296.31C)
     - ☐ Other *(specify)*:

  ___ NOTICE: It is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal support.

  n. ___ Parentage is established for children of this relationship born prior to the marriage.

  o. ___ Other *(specify)*:

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.

Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:

**JUL 0 8 2002**

**COMMISSIONER RICHARD G. VOGL**

JUDGE OF THE SUPERIOR COURT

5.  Number of pages attached: __11__

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

---

**NOTICE**

**Please review your will, insurance policies, retirement benefit plans, credit cards, other credit accounts and credit reports, and other matters that you may want to change in view of the dissolution or annulment of your marriage, or your legal separation. Dissolution or annulment of your marriage may automatically change a disposition made by your will to your former spouse. A debt or obligation may be assigned to one party as part of the division of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.**

**An earnings assignment will automatically be issued if child support, family support, or spousal support is ordered.**

**Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.**

1287 [Rev. July 1, 1999]                    **JUDGMENT**                    Page two

Marital Settlement Agreement
Marriage of Lupo

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

JUL 0 8 2002

ALAN SLATER, Clerk of the Court
BY K LEWIS

## I. INTRODUCTORY PROVISIONS

1.01. **IDENTIFICATION OF PARTIES.** This agreement is made between VAN A. LUPO, hereafter referred to as "Husband," and SHERYL L. LUPO, hereafter referred to as "Wife."

1.02. **DATE OF MARRIAGE.** The parties were married on July 28, 1985, and ever since then have been and are husband and wife.

1.03. **DATE OF SEPARATION.** The date of separation of the parties was disputed. The parties agreed date of separation for purposes of this settlement is January 1, 2000.

1.04. **IRRECONCILABLE DIFFERENCES.** Irreconcilable differences have led to the irremediable breakdown of the marriage, and there is no possibility of saving the marriage through counseling or other means.

1.05. **MINOR CHILDREN OF THE MARRIAGE.** There are no minor children of the marriage.

1.06. **CIRCUMSTANCES ON WHICH SUPPORT PROVISIONS BASED.** Husband is currently employed by Green Hills Software Inc. and has a gross income from all sources of $9667.00 per month. Wife is currently receiving social security disability income of $563.00 per month The marital standard of living of the parties is that of a two person household with a combined income of $122760.00 per year.

1.07. **DISSOLUTION PROCEEDINGS.** A petition for dissolution of the marriage of the parties was filed on September 5, 2000, in the Superior Court of California, County of Orange, Case Number 00D008449 and that action is currently pending.

MARITAL SETTLEMENT AGREEMENT

Marital Settlement Agreement
Marriage of Lupo

1.08.  **PURPOSE OF AGREEMENT.** Except as otherwise provided in this agreement, its purpose is to make a final and complete settlement of all rights and obligations between the parties, including all property rights, all obligations concerning spousal support and attorneys fees.

## II. SPOUSAL SUPPORT

2.01.  **BASIC CASH COMPONENT.** Husband will pay to Wife for spousal support the sum of $3000.00 per month, payable in advance, on or before the fifth day of each month, commencing March 1, 2002 and until either party's death, the remarriage of Wife, or modification or termination by further court order, whichever occurs first. TAX CONSEQUENCES. Wife will include all spousal support payments received from Husband in gross income, and Husband will deduct all such payments. If Wife fails to include such payments in gross income on her federal or state income tax return, she will indemnify Husband for any additional tax liability, attorney fees, and related costs.

2.02.  **AUTOMOBILE COMPONENT.** As additional spousal support, Husband will provide a car (or car allowance) of $730.00 per month commencing February 23, 2002, which is based on a monthly lease payment of $570.00, $100/$300 liability and collision insurance, and tax and registration of $35/ month. Wife is awarded any residuary value of the lease. Husband may satisfy his obligation under this provision by purchasing the leased vehicle outright and awarding it to Wife after January 1, 2003. In this event, Husband will be responsible for maintaining the insurance, tax, and registration on the vehicle.

2.03.  **LIFE INSURANCE COMPONENT.** As additional spousal support, Husband will obtain and pay for a level term life insurance policy in the amount of $500000.00. Wife will be named the irrevocable beneficiary on said policy. Said policy will be paid for by Husband and purchased from a life insurance company having at least a "AA" rating from Standard & Poors. Husband will take all actions, including submission to physical examinations, in a prompt manner to obtain and maintain the life insurance policy. Husband will provide proof of coverage and the designation of

MARITAL SETTLEMENT AGREEMENT

Marital Settlement Agreement
Marriage of Lupo

beneficiary to Wife by May 1 of each year commencing 2002.

2.04 **STEPDOWN ORDER.** On March 1, 2007, Spousal Support shall be reduced to the $3000.00 CASH COMPONENT plus LIFE INSURANCE COMPONENT on the assumption that wife will be earning $1300.00 per month. Wife is admonished that the court expects that she will be earning a minimum of $1300.00 per month by March 1, 2007 and will be charged with that amount of earning capacity and Wife will have the burden of proof to show that she should not be charged with an earning capacity of $1300.00 per month.

## III. PROPERTY

3.01. **IDENTIFICATION OF COMMUNITY PROPERTY.** The following is a complete list of the community assets of the parties:

(a) Proceeds from the sale of the Family residence.

(b) Furniture and furnishings in the possession of Wife.

(c) Furniture and furnishings in possession of Husband.

(d) Debts in the name of wife.

(e) Debts in the name of husband and wife.

(f) Obligations owing for the loans from husband's mother and stepfather for the purchase of the family residence which was sold during the marriage.

(g) The leased vehicles each are driving, neither of which has significant equitable value.

3.02. The exact character of the property subject to division was disputed by the parties as well as the obligations for debts. Issues concerning Epstein Credits and Watts Charges are also before the court. The parties make the following divisions in order to end the pending dispute:

(a) Husband is awarded as his sole and separate property:

3

Lupo

---

MARITAL SETTLEMENT AGREEMENT

Marital Settlement Agreement
Marriage of Lupo

(1) The sum of $69665.00 from funds currently being held in trust.

(2) Furniture and furnishings presently in Husbands possession.

(b) Wife is awarded as her sole and separate property:

(1) The sum of $16665.00 from funds currently being held in trust.

(2) Furniture and furnishings presently in Wife's possession.

(c) Husband shall pay and hold wife harmless from the following obligations.

(1) Wells Fargo Credit Card Accounts

(2) Citibank Account

(3) Mitsubishi (HRS) Account

(4) Good Guys (HRS) Accounts

(d) Wife shall be responsible for those obligations she incurred in her name alone during the marriage which are still outstanding.

**3.03. WARRANTY OF FULL DISCLOSURE OF EXISTENCE OF ASSETS.** Each party warrants to the other that he or she does not have any knowledge of any community assets other than those disclosed and listed in this agreement.

**3.04. REMEDY FOR BREACH.** If either party has any knowledge of any community asset other than those disclosed and listed in this agreement, that warrantor will transfer or pay to the warrantee, at the warrantee's election, one of the following:

(a) If the asset is reasonably susceptible to division, a

4

Lupo

MARITAL SETTLEMENT AGREEMENT

Marital Settlement Agreement
Marriage of Lupo

portion of the asset equal to the warrantee's interest in it;

(b) The fair market value of the warrantee's interest in the asset on the effective date of this agreement, plus interest at the rate of 10 percent per annum from the effective date to the date of payment; or

(c) The fair market value of the warrantee's interest in the asset on the date on which the warrantee discovers the existence of the asset, plus interest at the rate of 10 percent per annum from the discovery date to the date of payment.

This provision will not be deemed to impair the availability, in a Court of competent jurisdiction, of any other remedy arising from nondisclosure of community assets.

**3.05. WARRANTY OF FULL DISCLOSURE OF EXISTENCE OF LIABILITIES.** Each party warrants to the other that he or she neither has incurred nor will incur, any liability on or before the effective date of this agreement, not previously disclosed during these proceedings.

**3.06. WARRANTY REGARDING UNDISCLOSED GIFTS OR TRANSFERS.** Each party warrants to the other that he or she has made no undisclosed gifts or transfers for less than adequate consideration of any community assets with fair market values over $250 without the other party's knowledge.

**3.07. REMEDY FOR BREACH.** If either party has made any undisclosed gift or transfer for less than adequate consideration of any community asset with a fair market value over $250 without the other party's knowledge, that warrantor will pay to the warrantee a sum equal to half of the fair market value of the asset transferred, with the fair market value to be determined, at the warrantee's election, as of either (a) the effective date of this agreement or (b) the date on which the warrantee discovers the transfer, less any appreciation in the asset's value attributable solely to acts of the transferee(s) and successor(s). The warrantor will further pay to the warrantee interest at the rate of 10 percent per annum from the date elected for determination of the fair market value of the asset to the date of payment.

5

Lupo

Marital Settlement Agreement
Marriage of Lupo

This provision will not be deemed to impair the availability, in a Court of competent jurisdiction, of any other remedy arising from undisclosed gifts or transfers for less than adequate consideration.

3.08. **WARRANTY REGARDING AFTER-ACQUIRED LIABILITIES.** Each party warrants to the other that he or she will not incur, after the effective date of this agreement, any liability on which the other will be or may become personally liable or that could be enforced against an asset held by the other party.

3.09. **REMEDY FOR BREACH.** If either party incurs, after the effective date of this agreement, any liability on which the other will be or may become personally liable or that could be enforced against an asset held by the other party, that warrantor will indemnify the other for any liability on the obligation, attorney fees, and related costs.

3.10. **DISPOSITION OF AFTER-ACQUIRED ASSETS.** All assets acquired by either party after the date of separation of the parties will be the separate property of the party acquiring them, and each party disclaims and waives any and all rights and interest in each asset acquired by the other after that date.

## IV. ATTORNEY FEES AND COSTS

4.01. **CONTRIBUTION BY HUSBAND TO WIFE'S FEES.** Husband will pay $10000.00 to Hosford & Hosford, Inc., attorneys for Wife, as a contribution toward attorney fees and costs incurred by Wife in connection with the discovery, litigation, negotiation, preparation, and execution of this agreement as it relates to spousal support in the pending proceeding for dissolution of marriage, payable from the proceeds being held in trust Said payment will be paid directly from trust and deducted from the amount awarded to Husband pursuant to Paragraph 5.02 (a)(1). Wife will be solely responsible for any fees and costs incurred over this amount. The payment provided for, whether or not reduced to judgment, is intended to be in the nature of support and therefore not dischargeable in bankruptcy. Husband will be provided documentation of said payment when made.

Marital Settlement Agreement
Marriage of Lupo

## V. INCOME TAX

### 5.01. 2001 Tax Year

(a) ALLOCATION OF REFUNDS/LIABILITIES. Husband will receive 75 percent of the anticipated refunds in connection with the parties' joint federal and state income tax returns for the tax year 2001. Wife will receive 25 percent of the anticipated refunds in connection with those returns. Any tax liability due will be payable from each party in the same ratio as their individual taxable income.

(b) PREPARATION AND FILING. Wife will provide whatever documentation concerning income she had (1099, statement of benefits etc.) to Husband by March 15, 2002. Husband shall complete the tax returns and forward same to Wife. Wife shall return the executed tax return to Husband within 72 hours.

(c) SUBSEQUENT LIABITLITY FROM AUDIT. Each party is relying solely on other party's representations concerning 2001 income and expenses. In the event a tax liability is imposed as a result of audit of the 2001 returns, Husband shall be solely responsible for any additional tax due to his income/deductions and hold Wife harmless therefrom and Wife shall be solely responsible for any additional tax due to her income/deductions and hold Husband harmless therefrom.

(d) FAILURE TO EXECUTE RETURNS. In the event Wife fails to execute the prepared returns for the 2001 tax year or return them to Husband within 72 hours after receipt, Husband is authorized to file the return electronically and Wife will pay reasonable attorney's fees for a motion brought by Husband to compel wife to execute the returns.

Marital Settlement Agreement
Marriage of Lupo

## VI. GENERAL PROVISIONS

6.01. **RELEASE OF LIABILITIES AND CLAIMS.** Except as otherwise provided in this agreement, each party hereby releases the other from all interspousal obligations, whether incurred before or after the effective date, and all claims to the property of the other. This release extends to all claims based on rights that have accrued before the marriage, including, but not limited to, property and support claims. The parties have considered such claims in this agreement.

6.02. **STATUS OF TEMPORARY ORDERS.** All temporary orders previously rendered by the Court in the pending dissolution action of the parties will be deemed fully satisfied as to those acts whose performance was required on or before the effective date of this agreement and will be deemed superseded by this agreement as to those acts whose performance was not so required.

6.03. **WAIVER OF RIGHTS ON DEATH OF OTHER PARTY.** Except for their rights under paragraph 3.02 of this agreement, each party hereby waives the right to receive any property or rights whatsoever on the death of the other, unless such right is created or affirmed by the other under a will or other written document executed after the effective date of this agreement. Each party believes that he or she has received a fair and reasonable disclosure of the property and financial obligations of the other party. Each party's waiver is intended to be an enforceable waiver of that party's rights under Probate Code sections 140-147.

The rights waived include, but are not limited to, rights to any of the following:

(a) Property that would pass from the decedent by intestate succession;

(b) Property that would pass from the decedent by testamentary disposition;

(c) A probate homestead;

8

Lupo

Marital Settlement Agreement
Marriage of Lupo

(d) The setting aside of exempt property;

(e) A family allowance;

(f) The setting aside of an estate;

(g) An election to take community or quasi-community property against the decedent's will;

(h) The statutory share of an omitted spouse;

(i) An appointment as executor or administrator of the decedent's estate, except as the nominee of a third party legally entitled to make such a nomination;

(j) Property that would pass from the decedent by nonprobate transfer, such as the survivorship interest under a joint tenancy, a Totten trust account, or a payable-on-death account; and

(k) Proceeds as beneficiary of any type of insurance policy.

6.04. ENTIRE AGREEMENT. This agreement contains the entire agreement of the parties on these matters, superseding any previous agreement between them.

6.05. RECONCILIATION. If the parties reconcile, this agreement will nevertheless remain in full effect unless and until it is modified or revoked in a writing signed by both parties.

6.06. MODIFICATION BY SUBSEQUENT AGREEMENT. This agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them, an oral agreement to the extent that the parties execute it, or an in-court oral agreement made into an order by a Court of competent jurisdiction.

6.07. ATTORNEY FEES IN ACTION TO ENFORCE OR MODIFY AGREEMENT. The prevailing party in any action or proceeding to enforce or modify any provision of this agreement, or any corresponding provision of a subsequent judgment into which the provision is merged, will

9

Lupo

Marital Settlement Agreement
Marriage of Lupo

be awarded reasonable attorney fees and costs. For the moving party to be deemed the prevailing party for purposes of this provision, at least ten days before the filing of any motion he or she must provide written notice to the other party specifying the alleged breach or default, if capable of being cured, or the modification requested. The other party must then be allowed to avoid implementation of this provision by curing the breach or default specified or executing an agreement for the modification requested during the ten-day period.

6.08. **EFFECTIVE DATE.** The effective date of this agreement will be the date of its execution by the second of the parties to do so. Hosford $ Hosford, Inc. will disburse sum from trust as set forth herein upon execution by both parties and both counsel. Faxed signatures will be sufficient to make this agreement binding and effective. Hosford & Hosford, Inc. are released from any liability for distributing sums from trust pursuant to this agreement.

6.09. **COURT ACTION.** If a judgment of dissolution of marriage is obtained by either party, the original of this agreement will be attached to the stipulated judgment. The Court will be requested to do the following:

   (a) Approve the entire agreement as fair and equitable;

   (b) Order the parties to comply with all of its executory provisions;

   (c) Merge the provisions relating to spousal support, future acts with respect to property division, attorney fees and costs, and income tax, and only those provisions, into the judgment; and

   (d) Incorporate the remainder of the agreement in the judgment for the sole purpose of identification.

6.10. **LEGAL REPRESENTATION.** Each party has been represented in the negotiations and in preparation of this agreement by an independent attorney of his or her own choosing: Husband by Robert Glasser, (Glasser & Smith) and Wife by Hosford & Hosford, Inc. Each party has carefully read this agreement in its

10
Lupo

Marital Settlement Agreement
Marriage of Lupo

entirety, and his or her attorney has fully explained its contents and legal effect.

The foregoing is agreed to by:

Date: _Feb. 25 2002_

_____
Husband

Date: _2-24-2002_

_____
Wife

Approved as conforming to the agreement of the parties:

Date: _2/25/02_

_____
Attorney for Husband

Date: _3-7-2002_

_____
Attorney for Wife

11
Lupo

1  **Robert Glasser, Esq. (SBN: 047291)**
   **GLASSER AND SMITH, A.P.C.**
2  **901 Dove Street, Suite 299**
   **Newport Beach, California 92660-3036**
3  **Telephone: (949)752-2727**

4

5  **Attorney for Petitioner VAN LUPO**

**FILED**
ORANGE COUNTY SUPERIOR COURT

JUL 29 2002

ALAN SLATER, Executive Officer/ Clerk
_L. Taheri_
BY L. TAHERI

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **IN AND FOR THE COUNTY OF ORANGE**

10  In re the Marriage of:                    )    Case No. 00D 008 449
                                              )
11  Petitioner:  **VAN LUPO**                   )    **STIPULATION AND ORDER**
                                              )
12  and                                       )
                                              )
13  Respondent: **SHERYL LUPO**                 )
    _____  )

         The parties by and through their respective counsel of record, ROBERT

GLASSER of Glasser & Smith, APC, for Petitioner, VAN LUPO, and VALERIE

RYALL HOSFORD of Hosford & Hosford, counsel for Respondent, SHERYL LUPO

hereby stipulate the court enter the following orders:

         1.    Petitioner/Husband shall pay for the benefit of Respondent/Wife an

Automobile Component of Spousal Support as follows:

              a.    Commencing February 23, 2002 Petitioner will provide the

payments on the Mercedes Benz 280C automobile Respondent is driving, a value of

$730.00 per month based on a monthly lease payment of $570.00, $100/$300

liability and collision insurance, and tax and registration of $35.00 per month.

Respondent is awarded any residuary value of the lease. After January 1, 2003,

Petitioner has the option to satisfy his support obligation under this component by

purchasing the leased vehicle outright and transferring it to Respondent. In this

event, Petitioner will be responsible only for maintaining the insurance, tax, and

2.      Petitioner shall pay for the benefit of Respondent a Life Insurance Component of Spousal Support as follows:

   a.      Petitioner will obtain and pay for a level term life insurance policy in the amount of $500,000.00.  Respondent will be named the irrevocable beneficiary on said policy.  Said policy will be paid for by Petitioner and purchased from a life insurance company having at least a "AA" rating from Standard & Poors. Petitioner will take all actions, including submission to physical examinations, in a prompt manner to obtain and maintain the life insurance policy.  Petitioner will provide proof of coverage and the designation of beneficiary.

3.      As and for a Cash Component of Spousal Support Petitioner shall pay directly to Respondent thirty (30%) percent of all gross taxable self employment income (gross receipts less reasonable business expenses) in excess of $5,006.67 per month ("excess income") up to payment of $3,000.00 per month to Respondent/Wife.  Regardless that Petitioner may receive no excess income, he shall still pay Respondent $500.00 cash per month, which amount is a part of and shall be a credit against the percentage of excess income payable to Respondent for that month.

4.      Said support shall commence May 5, 2002 and continue thereafter until further order of the court.

5.      For purposes of payment of the Cash Component,

   a.      Thirty percent (30%) of such excess income received in a calendar month shall be divided by twelve (12), and that twelfth amount shall be payable to Respondent one-half by the 5th day and one-half by the 20th day of each month thereafter for twelve months.

   b.      By the 20th day of each month Petitioner shall provide Respondent with an accounting of such excess income showing the gross receipt(s), and the applicable expenses for the prior month.

6.      Currently Petitioner has monthly gross receipts of $3,600.00 and reasonable month business expenses of $1,500.00 from Decision Base, which income is from an independent contractor agreement, terminable at will.

7.      Petitioner shall not have credit for the difference in the amount that the Auto and Insurance Components are in excess of the amount of spousal support that a guideline recommended spousal support calculation based on his current gross taxable self-employment income would otherwise require him to pay. Petitioner shall have credit for the $500.00 per month payment described in paragraph 3. above, which credit shall be against the payment of the percentage of the excess income up to the $3,000.00 limit for that month.

**IT IS SO STIPULATED:**

Dated: 6 - 20 - 02

Van Lupo - Petitioner

Dated: 6 - 11- 02

Sheryl Lupo - Respondent

**APPROVED AS TO FORM:**

Dated: June 21 2002

ROBERT GLASSER
Of Glasser & Smith, APC
Attorney for Van Lupo - Petitioner

Dated: _____

Subbed Out See Sub of Atty

STEPHEN HOSFORD
Of Hosford & Hosford
Attorneys for Sheryl Lupo - Respondent

**IT IS SO ORDERED:**

Dated: _____ FEB 2 9 2002

RICHARD G. VOGL

RICHARD G. VOGL
Commissioner of the Superior Court

STIPULATION AND ORDER

# EXHIBIT H

AnnualCreditReport.com  ▸ Return to AnnualCreditReport.com  ▸ Frequently Asked Questions  ▸ Contact AnnualCreditReport.com

**Union**

your account    help    logout

report an inaccuracy    consumer rights

# Personal Credit Report
VAN ANTHONY LUPO
Source: TransUnion

May 16, 2006
Available until Jun 15, 2006

🖨 Display a printer friendly version
💬 Found an inaccuracy? Click to learn about correcting

## Van, remember to...

**Get your credit score + tips for making it higher.**

**View your debt analysis.**

## Personal Information

File Number: 123574225
Date issued: 05/16/2006

| | |
|---|---|
| **Name:** | VAN ANTHONY LUPO |

You have been on our files since 07/1977

**SSN:** XXX-XX-2880
**Date of Birth:** 07/1957

**Telephone** 387-5813

Your SSN is partially masked for your protection

### CURRENT ADDRESS

**Address:** 357 ST VINCENT ST.
IRVINE, CA 92618

**Date Reported:** 04/2004

### PREVIOUS ADDRESSES

**Address:** 430 FRANKLIN VILL DR., #212
FRANKLIN, MA 02038

**Date Reported:**

**Address:** 61 NECK HILL RD.
HOPEDALE, MA 01747

## EMPLOYMENT DATA REPORTED

**Employer Name:** DEPT OF PUBLIC HEALTH
**Date Reported:** 02/2004

**Position:**
**Date Hired:**

**Employer Name:** VENTRICOM
**Date Reported:** 12/2000

**Position:**
**Date Hired:**

**Employer Name:** PHOENIX TECHNOLO
**Date Reported:** 02/1995

**Position:**
**Date Hired:**

**Employer Name:** JANSEN ASSC
**Date Reported:** 12/1982

**Position:**
**Date Hired:**

Special Notes: Your Social Security number has been masked for your protection. You may request disclosure of the full number by writing to us at the address found at the end of this report. Also if any item on your credit report begins with 'MED1', it includes medical information and the data following 'MED1' is not displayed to anyone but you except where permitted by law.

## Account Information

The key to the right helps explain the payment history information contained in some of the accounts below. Not all accounts will contain payment history information, but some creditors report how you make payments each month in relation to your agreement with them.

| N/A | X | OK | 30 | 60 | 90 | 120 |
|-----|---|----|----|----|----|-----|
| Not Applicable | Unknown | Current | 30 days late | 60 days late | 90 days late | 120 days late |

## Adverse Accounts

The following accounts contain information that some creditors may consider to be adverse. Adverse account information may generally be reported for 7 years from the date of the first delinquency, depending on your state of residence. The adverse information in these accounts has been printed in >brackets< or is shaded for your convenience, to help you understand your report. They are not bracketed or shaded this way for creditors. (Note: The account # may be scrambled by the creditor for your protection).

### BANK OF AMERICA #4427100001870265

PO BOX 1598
NORFOLK, VA 23501
(800) 444-8430

| | | | |
|---|---|---|---|
| **Balance:** | $17,714 | **Pay Status:** | >Charged Off as Bad Debt< |
| **Date Updated:** | 06/2005 | **Account Type:** | Revolving Account |
| **High Balance:** | $6,599 | **Responsibility:** | Joint Account |
| **Credit Limit:** | $7,100 | **Date Opened:** | 09/1992 |
| **Past Due:** | >$17,443< | **Date Closed:** | 02/2000 |

**Loan Type:** Credit Card
**Remark:** Account closed by consumer
**Estimated date that this item will be removed:** 01/2007

### HOMECOMING FINANCIAL NET #431193077

2711 N HASKELL AVE
SUITE 1000
DALLAS , TX 75204-2911
(800) 206-2901

| | | | |
|---|---|---|---|
| **Balance:** | $0 | **Pay Status:** | >30 Days Past Due< |
| **Date Verified:** | 12/2001 | **Account Type:** | Mortgage Account |
| **High Balance:** | $319,200 | **Responsibility:** | Individual Account |
| **Past Due:** | $0 | **Date Opened:** | 01/1999 |
| **Terms:** | $2,540 for 360 months | **Date Closed:** | 12/2001 |

**Loan Type:** Conventional Real Estate Mtg
**Remark:** Closed
**Estimated date that this item will be removed:** 06/2008

| Late Payments 4 months | | Last 4 Months | OK nov | OK oct | OK sep | OK aug |
|---|---|---|---|---|---|---|
| 30 60 90 | | | | | | |
| 0   0   0 | | | | | | |

## Satisfactory Accounts

The following accounts are reported with no adverse information. (Note: The account # may be scrambled by the creditor for your protection).

### AMERICAN EXPRESS #009349547018348762

PO BOX 297871
FORT LAUDERDAL , FL 33329-7871
(800) 874-2717

| | | | |
|---|---|---|---|
| **Balance:** | $691 | **Pay Status:** | Paid or Paying as Agreed |
| **Date Updated:** | 04/2006 | **Account Type:** | Open Account |
| **High Balance:** | $2,271 | **Responsibility:** | Individual Account |
| **Past Due:** | $0 | **Date Opened:** | 02/1992 |

**Loan Type:** Credit Card

Late Payments 48 months — 30 60 90 / 0 0 0

Last 47 Months:
OK mar OK feb OK '06 OK dec OK nov OK oct OK sep OK aug OK jul OK jun OK may OK apr OK mar OK feb OK '05 OK dec OK nov OK oct OK sep OK aug OK jul OK jun OK may OK apr OK mar OK feb OK '04 OK dec OK nov OK oct OK sep OK aug OK jul OK jun OK may OK apr OK mar OK feb OK '03 X OK dec OK nov OK oct OK sep OK aug OK jul OK jun OK may

### AMERICAN HONDA FINANCE #1010147243

PO BOX 6070
CYRESS , CA 90630-0070
(800) 532-8082

| | | | |
|---|---|---|---|
| **Balance:** | $0 | **Pay Status:** | Paid or Paying as Agreed |
| **Date Updated:** | 03/2002 | **Account Type:** | Installment Account |
| **High Balance:** | $64,649 | **Responsibility:** | Individual Account |
| **Past Due:** | $0 | **Date Opened:** | 02/1995 |
| | | **Date Closed:** | 04/1999 |

**Loan Type:** Lease
**Remark:** Closed

Late Payments 31 months   Last 31
feb '02 dec nov oct sep aug jul jun may apr mar feb '01 dec nov oct sep aug jul jun may apr mar
OK OK OK OK OK OK OK OK

# EXHIBIT I

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VAN A. LUPO, | ) |
| Plaintiff, | ) ) ) C.A. No. 04-40202-FDS |
| | ) Hon. F. Dennis Saylor IV |
| v. | ) |
| BANK OF AMERICA CORPORATION, | ) Complaint Filed:  September 29, 2004 |
| Defendant. | ) ) ) |

## DEFENDANT'S, BANK OF AMERICA, N.A.(USA), RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES UNDER F. R. CIV. P. RULES 26 AND 33

The Defendant, Bank of America Corporation through Bank of America, N.A. (USA) ("Bank"), hereby submits its response to Plaintiff's, Van A. Lupo, ("Mr. Lupo") First Set of Interrogatories Under F.R. Civ. P. Rules 26 and 33 paragraph-by-paragraph as set forth herein. The Bank objects to the interrogatories to the extent that they seek information protected by the attorney-client privilege or work product doctrine to which Mr. Lupo is not entitled to under Rule 26(b) or Rule 33(a) of the Federal Rules of Civil Procedure and the Massachusetts Local Rules.  Further, Bank objects to answering any interrogatories which call upon it to guess or speculate as to the information requested by Mr. Lupo, and further objects to answering any interrogatories which are vague or ambiguous.  Further, discovery is ongoing and Bank reserves the right to supplement the answer to these Interrogatories in accordance with Rule 26(e).

Notwithstanding said objections, nor waiving same, Bank has responded to the interrogatories with the specific objections as noted herein, paragraph-by-paragraph, as follows:

## INTERROGATORY NO. 1

Identify the Person(s) answering these Interrogatories on behalf of BankAmerica and any Person(s) who supplied any information to BankAmerica for the purpose of preparing responses to these Interrogatories.

## RESPONSE NO. 1

Mary Lee Trevino, Vice President
Bank of America, N.A. (USA)
1825 E. Buckeye Road
Phoenix, Arizona 85034-4216

Outside counsel and the in-house legal department of the Bank also assisted in the preparation of the responses to these interrogatories together with other Bank individuals who may have contributed by collecting information but did not assist in the preparation of the responses.

## INTERROGATORY NO. 2

Give the full and complete corporate name, principal place of business, date and state of incorporation, and current principal business locations(s) of BankAmerica in California and Massachusetts.

## RESPONSE NO. 2

Bank objects to Interrogatory No. 2 on the ground and seeks information neither material nor relevant to the subject matter of this litigation. Notwithstanding said objection nor waiving same, Bank of America Corporation is a Delaware corporation, a bank holding company and a financial holding company under the Gramm-Leach-Bliley Act. The principal executive offices of the Corporation are located in the Bank of America Corporate Center, Charlotte, North Carolina 28255. Bank of America, N.A. (USA) is a nationally chartered credit card company with a place of business at 1825 E. Buckeye Road, Phoenix, Arizona and is a wholly owned subsidiary of Bank of America Corporation. In September 1998, Bank of America, N.A. (USA) was the successor of the merger with NationsBank of Delaware, N.A. Information concerning

-2-

the merger between NationsBank and Bank of America is set forth in Mr. Lupo's Account

Statements with Closing Dates of October 10, 1998 and May 10, 1999.

## INTERROGATORY NO. 3

Indicate when the disputed account was opened, and by whom it was opened. In BankAmerica's response please state whether you believe the person(s) who you believe opened the disputed account, in fact, signed a credit card agreement or other contract with BankAmerica.

## RESPONSE NO. 3

The Bank objects to Interrogatory No. 3 to the extent it is called upon to guess or

speculate as to what Mr. Lupo might consider to be "the disputed account." Notwithstanding

said objection nor waiving same, based upon a review of the books and records of the Bank, as

they are maintained in the usual and ordinary course of its business and including its files

maintained by the computer system, Sheryl Lupo and Van Lupo opened the account on

September 9, 1992 with Mr. Lupo listed as the joint applicant. The Bank statements to

Sheryl Lupo and Mr. Lupo also list Sheryl Lupo first and Van Lupo second which is the

customary procedure when there is a primary applicant and a co-applicant.

## INTERROGATORY NO. 4

Indicate when payments stopped being made upon the disputed account.

## RESPONSE NO. 4

On June 12, 2000, a check in the sum of $150 posted to the account.

## INTERROGATORY NO. 5

Indicate when and if BankAmerica first notified the alleged account holder(s) of the arrears in the disputed account. In BankAmerica's response please state which alleged account holder(s) BankAmerica notified, and how and where BankAmerica notified by giving the address, phone numbers, etc. at which BankAmerica contacted the alleged account holder.

## RESPONSE NO. 5

The Bank objects to Interrogatory No. 5 on the grounds that it is overly broad and vague,

and to the extent it is called upon to guess or speculate as to what Mr. Lupo might consider to be

-3-

"notification". Notwithstanding said objection nor waiving same, the Bank mailed monthly account statements properly addressed to Mr. Lupo and Sheryl Lupo. The account statements provided them with ongoing information concerning the status of the account including the amount outstanding, charges to the account for purchases or cash advances, the amount of late fees, the interest rate being applied to the account, and the amount of interest incurred each month. The Bank refers Mr. Lupo under Rule 33(a) to the account statements produced by the Bank which show, for example, an account balance on July 7, 1996 of $306.32 and on December 28, 2005 of $19,530.31 respectively, and also to the Credit Notes relating to this matter.

## INTERROGATORY NO. 6

Indicate when BankAmerica first referred the disputed account to a debt collection agency or firm(s). Additionally, please state the name, address, phone number and contact information of that firm or firms.

## RESPONSE NO. 6

The Bank objects on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence as it is not disputed that the amount is owed on the account and the name of the collection agent has no bearing on the liability of Mr. Lupo. Notwithstanding said objection nor waiving same, Mr. Lupo and Sheryl Lupo made their last payment on the account on June 12, 2000, and on September 5, 2000, Mr. Lupo filed for divorce from Sheryl Lupo. The account statements properly addressed to Mr. Lupo and Sheryl Lupo with a closing date of (i) October 10, 2000 showed late fees and a notice that they call the Bank "to avoid damage to their credit standing," (ii) November 10, 2000 requested that they call to, "avoid additional collection measures," (iii) January 10, 2001 and January 29, 2001 gave notice that the "... account has charged off and has been referred to our recovery department." To recover the funds

-4-

owed from Mr. Lupo the Bank engaged the law firm of Eskanos and Adler on

December 23, 2003, Client Services, Inc. on March 24, 2004, and Sunrise Credit Services, Inc.

on July 23, 2004. By way of further answer, the Bank refers Mr. Lupo under Rule 33(d) to the

documents produced including the Event Journal and Credit Notes. Discovery in this matter is

ongoing and the Bank will supplement the answer to this interrogatory under Rule 26(e).

## INTERROGATORY NO. 7

Indicate when BankAmerica first reported the disputed account as "charged off" against the Plaintiff's credit report with the major credit reporting agencies, and why BankAmerica reported it as "charged off".

## RESPONSE NO. 7

Since June 12, 2000, the Lupos have not made any payment on this account. The Bank's Account Statements were properly addressed and mailed to Mr. Lupo and Sheryl Lupo. The Statements with a closing date of (i) October 10, 2000 showed late fees and a notice that they call to avoid damage to their credit standing, (ii) November 10, 2000 requested that they call to "avoid additional collection measures," (iii) January 10, 2001 and January 29, 2001 gave notice that the "... account has charged off and has been referred to our recovery department." Despite the Bank's request that Mr. Lupo and Sheryl contact the Bank and/or pay the obligation, they failed and refused to do so. After being duly notified that the Bank would pursue collection measures and charge off the account, they still took no action to pay on the account. As a result, the Bank reported the account charged off to the reporting agencies consistent with its notification policies relating to all customer accounts.

## INTERROGATORY NO. 8

Indicate why it took BankAmerica over two years to have it or one of its agents contact the Plaintiff with regards to the disputed accounts alleged delinquency.

## RESPONSE NO. 8

The Bank objects to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, and also on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence. Notwithstanding said objection nor waiving same, the Bank did not waive any of its rights to recover the funds owed by not immediately pursuing Mr. Lupo in August 2000. Since Mr. Lupo failed and refused to respond to any of the requests to contact the Bank as set forth in the Bank's Account Statements and since he did not provide the Bank with a change of address notification, the Bank had to conduct a search for Mr. Lupo. At the same time, the Bank attempted to collect the debt from Sheryl Lupo. She refused to answer the Bank's telephone calls and was thought to have filed for bankruptcy in November 2000. When the Bank located Mr. Lupo, it began to pursue its legal remedies to collect on the defaulted account.

## INTERROGATORY NO. 9

Please describe BankAmerica's credit application solicitation program and in your description please detail how and when a consumer is chosen to receive an unsolicited credit application.

## RESPONSE NO. 9

The Bank objects to Interrogatory No. 9 on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence. Notwithstanding said objection nor waiving same, a customer might (i) respond to an advertisement and call the Bank to request an application, (ii) respond to a mailing and fill-out the enclosed application and send it to the Bank for processing, (iii) fill-out an application at a branch office, or (iv) fill-out an application online.

## INTERROGATORY NO. 10

Indicate whether BankAmerica or any of its acquisitions, subsidiaries or affiliates, has had a legal judgment rendered against it regarding its credit card application/collection, etc procedures, unfair debt collection, or violations of applicable state and federal credit protection statutes.

## RESPONSE NO. 10

The Bank objects to Interrogatory No. 10 on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 11

Indicate whether BankAmerica or any of its acquisitions, subsidiaries or affiliates, has complaints filed against it for unfair debt collections, credit card application/collection procedures, or violations of applicable state and federal credit protection statues with any state or federal attorney general's office.

## RESPONSE NO. 11

The Bank objects to Interrogatory No. 11 on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 12

Indicate BankAmerica's policies regarding investigating credit card fraud issues, investigating erroneous signatories on credit card applications, and other such policies that help determine the validity of returned credit card applications.

## RESPONSE NO. 12



The Bank objects to Interrogatory No. 12 on the grounds that it is overly broad and unduly burdensome. Further, the Bank objects on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence. Further, the Bank objects to this interrogatory to the extent it is called upon to guess or speculate as to what Mr. Lupo might

-7-

consider to be a "policy regarding investigating of credit card fraud issues." Notwithstanding said objection nor waiving same, the Bank reviewed this matter including its books and records and concluded that (i) Mr. Lupo and Sheryl Lupo used the credit card for ten (10) years and Mr. Lupo made payments on the account but never objected to being listed on the account, (ii) there is no fraud, (iii) Mr. Lupo is liable to the Bank for the credit card charges incurred by them during their marriage, and (iv) it is entitled to pursue the collection of the debt. The Bank's policy is to conduct an investigation of all claims in an effort to determine if the customer has a legitimate dispute. Upon receipt of a disputed credit card claim, the Bank notifies the appropriate credit report agencies that the matter is in dispute. Then, upon conclusion of the investigation it reports its findings concerning the account and makes adjustments to its report if warranted.

## INTERROGATORY NO. 13

Please indicate the type of services, products offered to the alleged account holders, including the terms and conditions, contractual obligations, penalties and fees, and interest rates during the applicable period.

## RESPONSE NO. 13

The Bank objects to Interrogatory No. 13 on the grounds that it is overly broad and unduly burdensome. Further, the Bank objects on the grounds that the interrogatory seeks information neither material nor relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence. Notwithstanding said objection nor waiving same, the Bank under Rule 33(d) directs Mr. Lupo to the Cardholder Agreement, Account Statements, Cardholder Agreement, and Credit Notes produced in this matter which detail terms of the Agreement, the interest rate charged, the balance due, charges to the account, and other information.

4028753v1

## INTERROGATORY NO. 14

Indicate how BankAmerica is determining each and every figure(s) it alleges is owed by the disputed account in its Answer and Counterclaim.

## RESPONSE NO. 14

The Bank under Rule 33(d) directs Mr. Lupo to the Cardholder Agreement, Credit Notes, and Account Statements mailed to Mr. Lupo and Sheryl Lupo which detail the charges to the account on a monthly basis from July 7, 1996 through December 28, 2005.

## INTERROGATORY NO. 15

Indicate how, when and if you conducted a fraud investigation after receipt of letter from Plaintiff to Credit Bureau Disputes, dated May 27, 2004 and detailing the Plaintiff's request for investigation.

## RESPONSE NO. 15

The Bank objects to Interrogatory No. 15 to the extent it seeks information protected by the attorney-client privilege and work product doctrine. Notwithstanding said objection, nor waiving same, in response to electronic inquiries dated January 27, 2004, February 5, 2004 and June 6, 2004 from Mr. Lupo to the Credit Bureaus, the Credit Bureaus reviewed the claims against Bank account information available on its system. If the information matches (such as Mr. Lupo being listed as a co-accountholder), then the information concerning Mr. Lupo's liability to the Bank is reported by the Credit Bureaus as verified. The Bank also conducted an investigation into the claim of Mr. Lupo that he was not a co-applicant on the account with Sheryl Lupo. The Bank reviewed all available documentation and information relating to the account such as: Account Statements, cancelled checks, transfer of liability forms, event logs and other documentation. The Bank also considered the lack of any written communications or telephone calls from Mr. Lupo for over ten (10) years objecting to his name being listed on the Account Statements. Based upon this information and the reasonable inferences that could be

4028753v1

drawn, the Bank concluded that there was not sufficient information and documentation from which it could conclude that Mr. Lupo and Sheryl Lupo were not liable under the account to the Bank.

## INTERROGATORY NO. 16

Please state, when, if and why you have taken the disputed account off of your computer system or records, in particular your fraud resolution department's computer systems or records.

## RESPONSE NO. 16

The Bank objects to Interrogatory No. 16 to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Notwithstanding said objection nor waiving same, on October 29, 2004 the Bank notified the Credit Bureaus that this matter is "in dispute", and that designation will remain until this matter is concluded.

## INTERROGATORY NO. 17

[SIC] Omitted by Plaintiff.

## INTERROGATORY NO. 18

[SIC] Omitted by Plaintiff.

## INTERROGATORY NO. 19

Please identify all Person(s) you expect to call as an expert witness at the trial of this case, and in doing so, please identify all witnesses, state the nature of each Person's specialization and the subject matter upon which each expert witness is expected to testify, describe the substance of all facts and opinions to which each expert witness is expected to testify, and provide a summary of the grounds for each opinion which each expert is expected to give.

## RESPONSE NO. 19

The Bank does not know who, if anyone, it will call as an expert witness in the trial or litigation of this matter. The Bank will supplement the response to this interrogatory and/or provide notice of trial experts in accordance with any pre-trial order of the Court,

## INTERROGATORY NO. 20

Please state the name and addresses of any persons whom you expected to call as a witness to trial, the subject matter in which each person is expected to testify, and the substance of fact and opinion on which each person is expected to testify.

## RESPONSE NO. 20

The Bank objects to Interrogatory No. 20 on the grounds that information is protected by the attorney-client privilege and/or work product doctrine. Notwithstanding said objection, nor waiving same, the Bank has not identified who, if anyone, it intends to call as a witness in the trial or litigation of this matter. The Bank will supplement the response to this interrogatory and/or provide notice of potential trial witnesses in accordance with any pre-trial order of the Court.

BANK OF AMERICA CORPORATION,

By its attorneys,

E. Macey Russell (BBO #542371)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000

Dated: January 20, 2006

Objections By:

E. Macey Russell

Signed this _19th_ day of January 2006, under the pains and penalties of perjury.

Mary Lee Trevino, Vice President
Bank of America, N.A. (USA)
1825 E. Buckeye Road
Phoenix, Arizona 85034-4216

-11-

# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VAN A. LUPO,                          )
                                      )
                Plaintiff,            )       C.A. No. 04-40202-FDS
                                      )       Hon. F. Dennis Saylor IV
        v.                            )
                                      )
BANK OF AMERICA CORPORATION,          )       Complaint Filed:  September 29, 2004
                                      )
                Defendant.            )
                                      )

## DEFENDANT'S, BANK OF AMERICA, N.A.(USA), RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS UNDER F.R.CIV.P. RULE 34

The Defendant, Bank of America Corporation through Bank of America, N.A.(USA) (the

"Bank"), hereby submits its response to Plaintiff's, Van A. Lupo, ("Mr. Lupo"), First Request for

Production of Documents Under F.R. Civ. P. Rule 34 paragraph-by-paragraph as set forth herein.

The Bank objects to producing documents protected by the attorney-client privilege or work

product doctrine or that are otherwise confidential under Rule 26(b) of the Federal Rules of Civil

Procedure, and further objects to producing documents where the Request seeks documents or

materials that are neither material nor relevant to the subject matter of this litigation nor

reasonably calculated to lead to the discovery of admissible evidence.  Further, the Bank objects

to any requests that are vague, overly broad and unduly burdensome.  Further, the Bank objects

to those requests which are phrased in such a way as to create an inference of a duty or

obligation that does not exist as a matter of law, or requires the Bank to guess or speculate as to

what is requested.

In responding to this request, the Bank has conducted a search for all responsive documents and produced those documents within its possession, custody, and control. Certain documents requested may no longer exist and may have been subject to the Bank's Record Retention Schedule. Notwithstanding, the Bank has produced documents numbered BA000001-BA000411; some of these documents have been previously produced but were not Bates stamped. Should the Bank determine that it has other documents responsive, it will supplement this response under Fed. R. Civ. P 26(e).

## REQUEST NO. 1

Copies of all signed, contracts, cardholder agreements, credit card application, acceptance forms, etc. pertaining to the disputed account whether by the Plaintiff or the alleged joint account holder.

## RESPONSE NO. 1



The Bank objects to Request No. 1 to the extent that it must guess or speculate as to what documents might evidence or relate to the "disputed account." Notwithstanding said objection nor waiving same, the Bank has produced to Mr. Lupo documents identified as BA000001-BA000411 which may be responsive to this Request which includes Account Statements and the Account Agreement. Further, discovery is not complete, and the Bank does not know what other documents may be responsive to this request. The Bank has conducted a search for the 1992 NationsBank Account Application Form which was used to open the account for Sheryl Lupo and Mr. Lupo but to date, the Bank has not successfully retrieved the document, and the search is ongoing. Under the Bank's record retention policy, Bankcard records are typically retained for a period of five (5) years. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

-2-

## REQUEST NO. 2

Copies of all credit card statements from January 1, 1992 to the present.

## RESPONSE NO. 2

The Bank has produced to Mr. Lupo documents identified as BA000001-BA000121 which may be responsive to this Request, they are Account Statements from July 7, 1996 until December 28, 2005. Under the Bank's record retention policy, Bankcard records are typically retained for a period of five (5) years. Discovery is not complete and the Bank does not know what other documents may be responsive to this Request or if documents prior to July 7, 1996 can be located. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

## REQUEST NO. 3

Copies of all credit card slips, credit card drafts, etc. from each vendor who accepted the disputed credit cards as payment.



## RESPONSE NO. 3

The Bank objects to Request No. 3 on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding said objection nor waiving same, the Bank does not maintain such records and in any event, its record retention policy for such documents is five (5) years. Further, the vendors who have or had account relationships with the Bank generally maintain such records only for eighteen (18) months after the transaction has been completed. Here, the last charge to this Account was in October 1999 and thus, the requested information is not available. However, the Bank has produced Account Statements that identifies items purchased by the Lupos using the credit card account. For example, on the

-3-

November 1999 Statement, the Lupos charged $76.90 for a purchase from Barrons China and $95.95 for a purchase from Donna Morgan LLC. Discovery is not complete, and the Bank does not know what other documents may be responsive to this Request. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

## REQUEST NO. 4

Copies of all checks made as payment on the disputed account.

## RESPONSE NO. 4

The Bank has produced copies of cancelled checks identified as BA000169-BA000188 which it has been able to recover to date. Under the Bank's record retention policy, Bankcard records are typically retained for a period of five (5) years. Discovery is not complete, and the Bank does not know what other documents may be responsive to this Request. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

## REQUEST NO. 5

Copies of all contract, agreements made between BankAmerica and any debt collection agency or firm to whom BankAmerica referred the disputed account.

## RESPONSE NO. 5

The Bank objects to Request No. 5 to the extent it seeks documents protected by the attorney-client privilege or work product doctrine and also on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence as it relates to Mr. Lupo's obligation to the Bank. When or if Mr. Lupo was contacted by a collection agency on behalf of the Bank is not a defense to his liability to the Bank nor would the Bank's contract or agreement with the

-4-

agency support his claims against the Bank. Further, the terms by which the Bank compensates the collection agency is not relevant or admissible on any issues in dispute in this matter. Notwithstanding said objections nor waiving same, the Bank is searching for responsive documents, discovery is not complete, and the Bank does not know what documents may be responsive to this Request. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

## REQUEST NO. 6

Copies of all records, correspondence, e-mail, memoranda, notes or other materials pertaining or relating to any communication or correspondence between BankAmerica and the Plaintiff.

## RESPONSE NO. 6

The Bank objects to Request No. 6 to the extent that it seeks information or documents protected by the attorney-client privilege or work product doctrine. Notwithstanding said objections nor waiving same, the Bank has produced copies of the Event Journal, Account Statements and Credit Notes identified as BA000001-BA000154 and BA000399-BA000411. The Event Journal, Account Statements and Credit Notes contain summaries of communications with Mr. Lupo concerning this matter. Under the Bank's record retention policy, Bankcard records are typically retained for a period of five (5) years. Discovery is not complete and the Bank does not know what other documents may be responsive to this Request. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

4028857v1

**REQUEST NO. 7**

Copies of all records, correspondence, e-mail, memoranda, notes or other materials pertaining or relating to any communication or correspondence between BankAmerica and the alleged joint account holder, Ms. Sheryl Lupo.

**RESPONSE NO. 7**

The Bank objects to Request No. 7 to the extent that it seeks information or documents protected by the attorney-client privilege or work product doctrine. Notwithstanding said objections nor waiving same, the Bank has produced copies of the Event Journal, Account Statements and Credit Notes identified as BA000001-BA000154 and BA000399-BA000411. The Event Journal, Account Statements and Credit Notes contain summaries of communications with Sheryl Lupo concerning this matter. Under the Bank's record retention policy, Bankcard records are typically retained for a period of five (5) years. Discovery is not complete and the Bank does not know what other documents may be responsive to this Request. The Bank will further respond to any obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive documents should they become available under Rule 26(e).

**REQUEST NO. 8**

Copies of any demands for payment made before the instigation of the present lawsuit.

**RESPONSE NO. 8**

The Bank objects to Request No. 8 to the extent that it seeks information or documents protected by the attorney-client privilege or work product doctrine. Further, the Bank objects to the extent it is required to guess or speculate what Mr. Lupo means by "demands for payment." Notwithstanding said objections nor waiving same, the Bank has produced copies of the Event Journal, Account Statements and Credit Notes identified as BA000001-BA000154 and BA000399-BA000411. The Event Journal, Account Statements and Credit Notes contain

-6-

summaries of communications with Mr. Lupo concerning this matter including demands by the

Bank that the Account be paid in full. Discovery is not complete and the Bank does not know

what other documents may be responsive to this Request. The Bank will further respond to any

obligation to identify trial exhibits pursuant to a Pre-Trial Order and produce any other

responsive documents should they become available under Rule 26(e).

## REQUEST NO. 9

Copies of all records, correspondence, e-mail, memoranda, notes or other materials
pertaining or relating to any communication or correspondence between BankAmerica and the
major credit reporting agencies regarding the disputed account.

## RESPONSE NO. 9

The Bank objects to Request No. 9 to the extent that it seeks information or documents

protected by the attorney-client privilege or work product doctrine. Notwithstanding said

objections nor waiving same, the Bank has produced documents BA000399-000411 which may

be responsive to this Request. Discovery is not complete and the Bank does not know what other

documents may be responsive to this Request. The Bank will further respond to any obligation

to identify trial exhibits pursuant to a Pre-Trial Order and produce any other responsive

documents should they become available under Rule 26(e).

## REQUEST NO. 10

Copies of all corporate policies regarding the lending or offering of credit at the time the
dispute account was opened, updated, etc., especially as it pertains to joint account holders.

## RESPONSE NO. 10

The Bank objects to Request No. 10 to the extent that it seeks information or documents

protected by the attorney-client privilege or work product doctrine and on the grounds that it

seeks documents neither material nor relevant. The Bank further objects on the ground that it is

not a defense to the Counterclaim that the Bank, "should not have extended the credit to

Sheryl Lupo or Mr. Lupo." Notwithstanding said objections nor waiving same, the Bank has produced to Mr. Lupo a document identified as BA000158-BA000168 which outlines the procedures to remove a co-applicant from an account and the Transfer of Liability Form.

## REQUEST NO. 11

Copies of all annual profit and loss data regarding the profitability of issuing credit cards to consumers from January 1, 1992 to the present.

## RESPONSE NO. 11

The Bank objects to Request No. 11 to the extent that it seeks information or documents protected by the attorney-client privilege or work product doctrine, and also on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 12

Copies of all records, correspondence, e-mail, memoranda, notes or other materials pertaining or relating to BankAmerica's acquisition of NationsBank.

## RESPONSE NO. 12

The Bank objects to Request No. 12 to the extent that it seeks information or documents protected by the attorney-client privilege or work product doctrine, and also on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

## REQUEST NO. 13

Copies of all records, correspondence, e-mail, memoranda, notes or other materials pertaining or relating to the transfer of the disputed account from NationsBank to BankAmerica.

4028857v1

**RESPONSE NO. 13**

The Bank objects to Request No. 13 on the grounds that it is overly broad and unduly burdensome and further seeks information or documents protected by the attorney-client privilege or work product doctrine, and also on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor is reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding said objections nor waiving same, the Bank has produced to Mr. Lupo Account Statements which contains information on the November 1998 and May 1999 statements concerning the change from NationsBank to Bank of America.

**REQUEST NO. 14**

Copies of all legal judgments between BankAmerica and/or NationsBank and any consumer regarding disputes pertaining to the issuance of credit cards, unfair debt collection, applicable state and federal consumer protection laws, etc.

**RESPONSE NO. 14**

The Bank objects to Request No. 14 on the grounds that it is overly broad and unduly burdensome and further seeks information or documents protected by the attorney-client privilege or work product doctrine, and also on the grounds that it seeks documents neither material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 15**

Copies of all reports, complaints, correspondences, etc. filed by individual consumers against BankAmerica and/or NationsBank with federal or state attorney general offices.

**RESPONSE NO. 15**

The Bank objects to Request No. 15 on the grounds that it is overly broad and unduly burdensome and further seeks information or documents protected by the attorney-client

-9-

privilege or work product doctrine, and also on the grounds that it seeks documents neither

material nor relevant to the subject matter of this litigation nor reasonably calculated to lead to

the discovery of admissible evidence.

## REQUEST NO. 16

Copies of all corporate policies regarding credit card fraud issues, erroneous signatories on credit card applications, and other such policies that help determine the validity of returned credit card applications.

## RESPONSE NO. 16

The Bank objects to Request No. 16 on the grounds that it is overly broad and unduly

burdensome and further seeks information or documents protected by the attorney-client

privilege or work product doctrine, and also on the grounds that it seeks documents neither

material nor relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding said objections nor waiving same the Bank processed the credit card application

of the Lupos in 1992, advanced credit to them, and mailed monthly statements to them for over

ten (10) years. The names of Mr. Lupo and Sheryl Lupo appeared on the Bank's monthly

Account Statements and the statements were properly addressed and mailed to the Lupos.

Further, to make payments on the account, Mr. Lupo made out and executed checks payable to

the Bank. The checks used by Mr. Lupo had an address matching the address on the Account

Statements. Mr. Lupo executed a check on December 1, 1998 payable to NationsBank, and then

another on June 5, 1999 payable to Bank of America. At no time prior to June 12, 2000 (when

the last payment was made on the account) or before September 5, 2000 (when Mr. Lupo filed

for divorce), did Mr. Lupo notify the Bank (orally or in writing) that this was not his account. In

fact, Mr. Lupo did not raise this issue prior to his divorce being finalized in July 2002. He only

raised the issue in the fall of the 2003 when the Bank first attempted to collect the debt directly

4028857v1

from him.  Therefore, the Bank had no reason to believe that any fraud had taken place and thus,

the Bank's "corporate polices" are not relevant.

## REQUEST NO. 17

Copies of all records, correspondence, e-mail, memoranda, notes or other materials
pertaining or relating to fraud investigation held after receipt of letter from Plaintiff to Credit
Bureau Disputes, dated May 27, 2004 and detailing the Plaintiff's request for investigation.

## RESPONSE NO. 17



The Bank objects to Request No. 17 to the extent that it is overly broad and unduly

burdensome and further seeks information or documents protected by the attorney-client

privilege or work product doctrine.  Notwithstanding said objection nor waiving same, the Bank

conducted an investigation and reviewed its books and records relating to this matter, and has

proceeding documents such as Account Statements since 1996, transfer of liability form, upgrade

forms and cancelled checks.  The names of Mr. Lupo and Sheryl Lupo appeared on the Bank's

monthly Account Statements and the statements were properly addressed and mailed to the

Lupos for over ten (10) years.  Further, to make payments on the account Mr. Lupo made out and

executed checks payable to the Bank.  The checks used by Mr. Lupo had an address matching

the address on the Account Statements.  Mr. Lupo executed a check on December 1, 1998

payable to NationsBank and then another on June 5, 1999 payable to Bank of America.  At no

time prior to June 12, 2000 (when the last payment was made on the account) or before

September 5, 2000 (when Mr. Lupo filed for divorce) did Mr. Lupo notify (orally or in writing)

the Bank that this was not his Account.  Under the Bank's record retention policy, Bankcard

records are typically retained for a period of five (5) years.  Thus, the 1992 NationsBank policies

are likely not available and even if they are, the policies are not relevant.  Notwithstanding said

objection nor waiving same, the Bank has produced documents BA000399-BA000411 which are

Inquire Account, Event Detail Notes, and Credit Notes relating to the claims of Mr. Lupo.

Discovery in this matter is ongoing and should the Bank uncover any additional documents

responsive to this Request under Rule 26(e), and it will further respond to any obligation to

identify documents pursuant to a Pre-Trial Order.

## REQUEST NO. 18

All records, documents, receipts, vouchers and lists of the names and addresses of any and all proposed expert witnesses, together with any and all written reports rendered to BankAmerica or on BankAmerica's behalf by any such proposed expert witness.

## RESPONSE NO. 18

The Bank objects to Request No. 18 on the grounds that it seeks information or

documents protected by the attorney-client privilege and/or work product doctrine.

Notwithstanding said objection nor waiving same, the Bank will produce the requested

information that is not otherwise objectionable and subject to privilege should it select expert

witnesses to testify in this matter under Rule 26(e), and it will further respond to any obligation

to identify documents pursuant to a Pre-Trial Order.

## REQUEST NO. 19

All records, documents, receipts, vouchers and lists setting forth the names and addresses of any and all persons who were witness to or have knowledge or information of any relevant facts relating to this action, including those who possess proof or who may give testimony of the incidents or of the acts involved or other evidence relevant and material to the trial of the above-captioned matter, including all written memoranda, written reports, and other physical evidence BankAmerica intends to produce at the time of trial.

## RESPONSE NO. 19

The Bank objects to Request No. 19 on the grounds that it seeks information or

documents protected by the attorney-client privilege and/or work product doctrine.

Notwithstanding said objection nor waiving same, the Bank has produced documentation in this

matter which may identify individuals who have knowledge of this case.  The Bank will produce

-12-

## CERTIFICATE OF SERVICE

I, E. Macey Russell, attorney for the Defendant, Bank of America, N.A. (USA), hereby

certify that a copy of the above document was this date served by first-class mail, upon the

following:

Jill C. Shedd, Esq.

Law Office of Jill Shedd & Associates

929 Massachusetts Avenue, Level 01

Cambridge, MA 02139

E. Macey Russell, P.C.

Dated: January 20, 2006

-14-

# EXHIBIT K

Page: 1 Document Name: an~

```
(AED KEY 4427100001870265
                    INQUIRE ACCOUNT EVENT DETAIL
                              LAST MNT 09/30/2004   PREV MNT 09/28/2004
  SHERYL L LUPO
  DATE 070104 TO 010191 TRACK _____ EVENT ___ ___ TRAN ID _____ OPERATOR __
    DATE    TIME    TYPE OPER   TRACKG TRAN
  000000 00:00      999 0235GM         MAMM
  MEMORY MESSAGE              DATE MAINTAINED 02/04/2004
  POTENTIAL BANKRUPTCY,CLOSED ACCT,CHAPTER:07 FEES PAID: Y
  ATTY: THOMAS LENARD ATTY PH#: (714)680-4725
  POA ATTY JILL SHED 02/04/04
  060404 09:42 A    900 3419CC        AAME
  RCVD CREDIT BUREAU DISPUTE VIA MAIL / BTCH #4 DATED 6/1/04 / WEEK OF 6/4
  DUP RQST RVD FROM C/H2 REGARDING ACCT NOT BELONGING TO HIM & HE IS RQSTN
  OF A SIGNED CREDIT APP, LTR C/H SENT IS ALSO A VIRUS LTR, THIS ACCT WAS
  TO CORRESPONDENCE VA6-300-05-03 ON 6/2/04 (FAX BTCH #2 DATED 5/28/04)****CC
  060204 02:34 P    901 2401AH        AAME
  BATCH 2 5/28 FAX CUST:NM 2 REQ COPY OF APPL WITH SIGN,NOT CBR ITEM FORWRD
  2 CORRESPDNCE 2 ORDER APPL...AH




  B0122400000000 - BEGINNING OF SELECTED RECORDS
  F1=HELP F3=EXIT F4=ACCT F5=SUMMARY F6=WORK F7=PBWD F8=PFWD F9=ADDR IND    F __
```

*(handwritten:)* Shows disputed thus 9/30 in

Date: 10/26/2004 Time: 11:21:18 AM                              BA000400