# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VAN A. LUPO, | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. Number 04-40202-FDS |
| | ) | |
| BANK OF AMERICA, | ) | |
| and | ) | |
| SHERYL LUPO | ) | |
|       Defendants | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF VAN LUPO'S MOTION TO AMEND PLEADINGS TO ADD AMENDED AND SUPPLEMENTAL COUNTS AGAINST DEFENDANT BANK OF AMERICA

NOW COMES the Plaintiff in the above titled matter and respectfully this memorandum in support of Plaintiff Van Lupo's Motion to Amend Pleadings to Add Amended and Supplemental Counts Against Defendant Bank of America, namely a count under 15 U.S.C. §1681s-2(b)(1) and a count under the Massachusetts's equivalent M.G.L. c. 93 §54A *et seq.*

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

This action was originally an action against Bank of America for unfair credit card practices in violation of federal and state laws. The basic underlying facts are as follows. In the mid 1990's Sheryl Lupo forged her then husband's name to a credit card solicitation from NationsBank. At the time Sheryl Lupo did not tell her then husband of this transaction. In late 1997 Sheryl Lupo further attempted to indebt her ex-husband by signing up for Platinum Priority Card Upgrade. Sheryl Lupo continued to pay, hide or coerce through misrepresentation her ex-husband into paying the minimum payments on the credit card. Additionally, throughout the years

NationsBank was bought and sold and eventually this account ended up as a Bank of America credit card.

In the summer of 2000 the Plaintiff's and Sheryl Lupo's marriage completely broke down. The Plaintiff moved out of the marital home, but continued to support Sheryl Lupo by paying her bills. In anticipation of divorce proceedings on August 7, 2000 Sheryl Lupo attempted to transfer the responsibility for this credit card account into her name alone. She forged her ex-husband's name and sent it into Bank of America. She did not inform the Plaintiff of this action. On July 16, 2001 Sheryl Lupo signed a Declaration of Disclosure/Schedule of Assets and Debts with the Superior Court of California Orange County. In the Disclosure/Schedule of Assets and Debts Sheryl Lupo listed the "VISA –Platinum" as her debt. On July 8, 2002, the Plaintiff and Sheryl Lupo entered into the first of two Martial Settlement Agreements. In that first agreement Sheryl Lupo contractually agreed to pay all debt in her name and indemnified the Plaintiff against any action brought against him for her failure under that section of the Agreement. At the time of the divorce Sheryl Lupo represented to the Plaintiff that she would be filing for federal bankruptcy protection.

A person reputing to be with Bank of America and claiming that Mr. Lupo had an outstanding balance with Bank of America from a credit card issued in September of 1992 called the Plaintiff, Van A. Lupo, on his cellular phone in the fall of 2003. Up until that point, Mr. Lupo was never aware of any credit card, never mind a balance, with Bank of America. Mr. Lupo informed that person that he was divorced and that his ex-wife was responsible for much of the credit card debt, and perhaps Bank of America should be calling her. The Bank of America

representative noted that the credit card was allegedly a joint account. Mr. Lupo requested that

he be sent an original copy of the signature page of the credit card application to verify that it

was indeed his signature. No such signature page was forthcoming.

In December of 2003, Mr. Lupo requested a credit report from Trans Union and received said

credit report. Mr. Lupo noticed that Bank of America had reported this account to Trans Union

as "charged off as bad debt". Mr. Lupo disputed the report from Bank of America to Trans

Union, and in February of 2004, Trans Union reported back to Mr. Lupo that the Bank of

America report was "verified".

When Mr. Lupo learned that Bank of America was continuing to report the credit card balance

on his credit report, he attempted to call Bank of America to resolve this matter. At that time, Mr.

Lupo was informed that an Attorney Eskoner, a professional debt collector, was handling the

Bank of America account. Mr. Lupo spent the next few weeks attempting to contact Attorney

Eskoner, and finally learned that Attorney Eskoner's firm had closed the account and returned it

to Bank of America on March 22, 2004.

Mr. Lupo then retained counsel. On May 27, 2004, present counsel, called Bank of America's

credit card department and spoke with a Ms. Laura Taffea [sic]. Ms Taffea [sic] told present

counsel to send a formal letter of dispute to Bank of America's Credit Dispute Bureau. On May

27, 2004, present counsel sent a letter, via facsimile and certified mail to Bank of America Credit

Dispute Bureau requesting that they produce the signature card. Bank of America did no respond

to the Plaintiff and Bank of America continued to report the account as "charged off" to the various credit reporting agencies despite the Plaintiff's bona fide dispute.

In September of 2004 the Plaintiff filed this present case. Under the federal court rules the Plaintiff first attempted to serve Bank of America with the standard waiver of service forms. Per usual, Bank of America did not respond. Thus, the Plaintiff was forced to serve Bank of America via a standard process server in May 2005. Bank of America responded to Plaintiff's Initial Complaint with various documents and information.

Subsequent to the initial filing of this lawsuit the Plaintiff, through investigation and through interaction with Defendant Bank of America became aware that Defendant, Sheryl Lupo, has not availed herself of Federal Bankruptcy protection as previously believed. Additionally, and once again, subsequent to the filing of the initial pleadings Bank of America has produced documentation showing Sheryl Lupo's forgery of the Plaintiff's name to at least one document. The Plaintiff and Bank of America filed an Assented to Motion to Join Sheryl Lupo, along with a Memorandum of Law, and an Amended Complaint in October of 2005. This Honorable Court granted the Motion on February 17, 2006.

Bank of America filed an Amended Answer to the Amended Complaint on March 22, 2006 in which it added counts against the Plaintiff Mr. Lupo. The first new count is a count to reach and apply funds the Bank alleges are due and owing the co-defendant Sheryl Lupo reputedly based on "information, belief and knowledge" and the second new count is for injunctive relief based

on the reach and apply count. The Plaintiff filed and Answer to the new counts contained in Bank of America's Amended Answer to the Amended Complaint.

Since that time new information has come to light that necessitate another supplemental and amended complaint. Most disturbingly is the fact that Bank of America is still reporting, or has failed to update the status of Mr. Lupo's *alleged* account with the various credit reporting agencies. Specifically, Mr. Lupo requested his credit report from TransUnion on May 16, 2006 and said credit report clearly and prominently lists the Bank of America credit card account, the very account that is at the heart of this present lawsuit, as "charge off as bad debt" with a last update of June 2005 (a true copy of said credit report is attached to the proposed Amended Complaint as Exhibit H). This is despite the Bank's statements in its Answer, its Amended Answer, as well as answers to discovery, that as of October 29, 2004 it has notified the Credit Bureaus that this matter is "in dispute", and that designation will remain until this matter is concluded.

Additionally, the Plaintiff, after review of documents produced by the Bank in discovery, has found that the Bank was aware of the Plaintiff's dispute over the *alleged* account as far back as May 2004, but yet the Bank did not report it as "disputed" to the credit reporting agencies until the Plaintiff was forced to file the present lawsuit. Furthermore, the Bank admits through discovery that it does not have a signed contract nor can it produce one, and also admits that it does not have any charge slips showing the Plaintiff's signature on any credit card purchases (true copies of documents produced by the Bank are attached to the Amended Complaint as Exhibits I - K)

## **ARGUMENT**

Fed.R.Civ.P. Rule 15(a) provides for amendment of a party's pleading by leave of court, "and leave shall be freely given when justice so requires." Fed.R.Civ.P. Rule 15(d) provides for a supplemental pleading "setting forth transactions or occurrences or which have happened since the date of the pleading sought to be amended."

In Thomas v. Farmville Mfg. Co., Inc., 705 F.2d 1307 (11th Cir.1983) the court held that it must grant litigant's motion for leave to amend the pleadings "when justice so requires." Fed.R.Civ.P 15(a). In Thomas v. Farmville Mfg. Co, Inc the 11th circuit noted that "the Supreme Court reasoned: 'In the absence of any apparent or declared reason- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."'

In the present case, the Plaintiff has recently learned that despite this lawsuit and despite the fact that the Bank admits it does not have a copy of the original signed contract or credit card agreement is still reporting this *alleged* account against the Plaintiff and thus is in violation of 15 USC §1681s-2(b)(1) and the Massachusetts' equivalent M.G.L. c. 93 §54A *et seq*. In Johnson v. MBNA America Bank, NA, 357 F.3d 426, 431 the court held that MBNA was in violation of 15 USC §1681s-2(b)(1) with a fact pattern eerily similar to the case at bar. In that case, the court held that §1681s-2(b)(1) requires creditors to conduct a reasonable investigation of their records to determine whether the disputed information can be verified. Johnson v. MBNA America Bank, NA was decided using 15 U.S.C. §1681s-2(b)(1) before the changes to that statute under

the Fair and Accurate Credit Transaction Act of 2003.  However, the court noted in Johnson v. MBNA America Bank, NA, 357 F.3d 426, 430 FN1 that the new provision would impose additional duties on creditors in connection with investigations of consumer disputes.  And that is indeed the case.  Not only has the court held that the creditor must perform a reasonable investigation and if the creditor's determined that it "no longer had the application, they could have al least informed the credit reporting agencies that [it] could no conclusively verify that [the plaintiff] was a co-obligor" see Johnson v. MBNA America Bank, NA, 357 F.3d 426, 432, but the law itself in 15 U.S.C. §1681s-b(2)(1) subsection (e) states that "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.  Bank of America through responses to Discovery states hat it can not verify the Plaintiff's signature on a credit application because it does not have said credit card application in its possession.

Other cases on point support the Plaintiff's FCRA count.  For instance, in Alabran v. Capital One Bank, 03:04CV835, 2005 WL 3338663 (2005) (attached hereto as Exhibit A), a credit card was opened by the plaintiff's then-wife and the bank could not produce a credit card application.  The bank in that case mailed monthly billing statements to the marital address and the plaintiff even made payments on the account.  The plaintiff and the wife who opened the credit card divorced and the plaintiff notified the bank that he disputed his responsibility on the card.  The Court in the Alabran v. Capital One Bank case applied Johnson v. MBNA America Bank, NA and stated that whether the bank in the Alabran v. Capital One Bank case was in violation of 15 U.S.C.

§1681s-2(b)(1) was a question of fact for the jury to determine. As with the Alabran case the Defendant Bank in this case can not produce the credit card application and alleges that statements were sent to the marital home listing both the co-defendant Sheryl Lupo as the primary account holder and the Plaintiff as an authorized user. However, the present case at bar is even more favorable to the Plaintiff, Van Lupo in that unlike the Alabran case the co-defendant, Sheryl Lupo attempted, not once but twice, to accept full responsibility for this *alleged* account via Transfer of Liability form (see call logs produced by the Bank and the Transfer of Liability form signed by the co-defendant Sheryl Lupo and forging Van Lupo's name attached hereto as Exhibit B). The Bank, in the present case, declined to transfer sole liability to the co-defendant, Sheryl Lupo.

Yet another case on point is Schaffusen v. Bank of America, NA, 393 F.Supp.2d 853 (2005) the plaintiff actually admitted to liability on the credit card. The plaintiff in the Schaffusen v. Bank of America, NA case states that Bank of America violated 15 U.S.C. §1681s-b(2)(1) because it did not abide by an agreement it had entered to with Schaffusen in settlement of the account. Bank of America in the Schaffusen v. Bank of America, NA case was unable to produce a copy of the letter it allegedly sent to the credit reporting agencies requesting that the account be listed as "settled in full". The Court in the Schaffusen v. Bank of America, NA once again relied on Johnson v. MBNA America Bank, NA, 357 F.3d 426 and stated that once Bank of America received Schaffusen's disputes it was required to conduct a reasonable investigation of [its] records to determine whether the dispute information can be verified Schaffusen, 393 F.Supp.2d 853 at 858 and that the "lack of follow through on this issue create at least a jury question as to the reasonableness of Bank of America's procedures". The present case at bar as a fact pattern even more favorable to the plaintiff. In the present case the Plaintiff denies opening the account

and the Bank has been unable to produce any paper, such as the credit card application or credit card slips that bear his signature. The Bank solely rests on the assertion that statements were mailed to the marital home and that the Plaintiff made payments on the account. These assertions by the Bank are similar to assertions made by the various bank defendants in the Johnson v. MBNA America Bank, NA and Alabran v. Capital One Bank and even in Schaffusen v. Bank of America, NA and the courts have consistently held that those assertions alone are not enough to justify that the banks were not indeed in violation of 15 U.S.C. §1681s-2(b)(1).

## CONCLUSION

Bank of America through responses to discovery states that it can not produce credit card slips signed by the Plaintiff because its corporate policy is not to keep said slips for more than five years. Nevertheless, despite the fact that it cannot verify the Plaintiff as co-obligor it continues to report the account as "charged off" against the Plaintiff's credit report. Thus, in the interest of justice and for the foregoing reasons the Motion to Amend should be allowed.

Van A. Lupo
By his Counsel

Jill C. Shedd
BBO No. 652488

Law Office of Jill Shedd & Associates, P.C.
430 Franklin Village Drive
#212
Franklin, MA.  02038
508-720-9267

.

DATED:       May 25, 2006