# EXHIBIT A

**Westlaw Attached Printing Summary Report for ZQ,PARALEGAL 5550934**

| | |
|---|---|
| Date/Time of Request: | Thursday, May 25, 2006 20:42:00 Central |
| Client Identifier: | SW |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 499 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw.**

Slip Copy                                                                                                                    Page 1

Slip Copy, 2005 WL 3338663 (E.D.Va.)
**(Cite as: Slip Copy)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Virginia.
Larry ALABRAN, Plaintiffs,
v.
CAPITAL ONE BANK, Defendant.
**No. Civ.A. 3:04CV935.**

Dec. 8, 2005.

Harry Franklin Bosen, Jr., Harry F. Bosen Jr., PC, Salem, VA, Leonard Anthony Bennett, Consumer Litigation Associates PC, Newport News, VA, Matthew James Erausquin, Consumer Litigation Associates PC, Fairfax, VA, for Plaintiffs.
William Harrison Baxter, II, Bryan Alan Fratkin, Earle Duncan Getchell, Jr., McGuireWoods LLP, Richmond, VA, Waller Trolinger Dudley, McGuireWoods LLP, McLean, VA, for Defendant.

*MEMORANDUM OPINION*

DOHNAL, Magistrate J.
*1 This matter is before the court on: (1) the Defendant's Motion for Summary Judgment (docket entry no. 28); (2) the Plaintiff's Motion for Partial Summary Judgment (docket entry no. 45); and (3) the Plaintiff's Motion to Strike Exhibits Proffered and Attached by Defendant in Support of it's Motion for Summary Judgment (docket entry no. 62).[FN1] For the reasons discussed herein, it is the judgment of the court that the Plaintiff's Motion for Partial Summary Judgment must be GRANTED and that the Defendant's countervailing motion for total dispositive relief as well as the Plaintiff's related motion to strike the exhibits submitted by the Defendant in support of its motion be DENIED, the latter motion of the Plaintiff being rendered moot by the court's resolution of the Defendant's motion.

> FN1. There are also pending motions *in limine* by the Plaintiff that will be addressed in a separate opinion that will issue before trial proceedings.

Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, unsupported conclusory allegations by the non-moving party are not enough to create a genuine dispute of material fact sufficient to withstand the granting of dispositive relief. *Celotex Corp.,* 477 U.S. at 328 (White, J., concurring). In essence, the court must decide if the evidence, when viewed in the light most favorable to the non-moving party, "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251-52.

Undisputed Facts and Reasonable Inferences

The court deems the following to be the undisputed facts and reasonable inferences upon which the pending motions are to be resolved:[FN2]

> FN2. Although the Plaintiff contests many of the facts as alleged by the Defendant to be undisputed, the objections are based primarily on reasons of authenticity as opposed to substantive objection. For example, the Plaintiff disputes the asserted undisputed fact that he personally received or was otherwise aware of the monthly statements before the divorce, but he does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 2

Slip Copy, 2005 WL 3338663 (E.D.Va.)
**(Cite as: Slip Copy)**

not dispute that they were sent to that address. (*See e.g.*, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. (Pl.'s Opp'n Memo.), ¶ 5 at 6). The distinction does not make any difference in the court's ultimate resolution of the motion and the court will therefore consider the basic factual issue involved as being undisputed.

1. Two credit card accounts were opened by the Defendant (Capital) regarding the Plaintiff, the first (opened in 1997) being in the joint names of the Plaintiff and his then-wife, and the second (opened in 2002) in the sole name of the Plaintiff. (Mem. Pts. & Auth. Supp. Def.'s Mot. Summ. J. (Def.'s Mem.), Undisp. Facts ¶¶ 1, 34, exs. G & N).
2. There is no application or other record available as to the first of the accounts and the signature in the name of the Plaintiff on the second was not executed by him as is conceded by the Defendant. (Pl.'s Mem. Supp. Pl.'s Mot. Partial Summ. J. (Pl.'s Mem.), ex. 1 at 13, 23 (McFarland Dep.).FN3

   FN3. Aside from a non-expert comparison of the subject signature on the second application that is available and known signatures of the Plaintiff that appear to be markedly different, counsel for the Defendant conceded at oral argument that the Defendant is not contending that the Plaintiff signed the application. (Pl.'s Mem., exs. 3, 4).

3. The Plaintiff was an authorized user of at least one of the credit cards and used it on occasion. (Def.'s Mem., Undisp. Facts ¶ 5, ex. B); (Pl.'s Resp. Def. First Req. Admis. no. 28); (Pl.'s Mem., ex. 2 at 77-78 (Pl.'s Dep.)).
4. Capital mailed monthly billing statements to the marital address of the Plaintiff and his wife over the some five year period of the account (January 1998 to April 2003). (Def.'s Mem., Undisp. Facts ¶ 6-9, ex. F).
*2 5. The Plaintiff made two payments on the account, one at the request of his wife and the second in an effort to resolve the developing dispute with Capital after he asserts he first became aware of a potential claim against him. (Pl.'s Mem., ex. 2 at 127-128, 135 (Pl.'s Dep.), exs. 3-4).
6. All remaining payments (some sixty-two) were made by Plaintiff's wife on both a separate checking account of the wife or a joint checking account with the Plaintiff. (Def.'s Mem., Undisp. Facts ¶¶ 6-10; Pl.'s Mem., Undisp. Facts ¶¶ 14-16).
7. Capital does not hold an authorized user responsible for the ensuing indebtedness resulting from the authorized user's use of a credit card. (Pl.'s Mem., ex. 5 at 58 ("An authorized user is a consumer who's authorized to use a credit card, but he cannot make any major changes; he's not responsible for the debt.") (Dep. of Def. R. 30(b)(6) witness)).
8. Divorce proceedings were initiated between the Plaintiff and his wife (who admitted in deposition that she "may have" applied for a Capital credit card) in March 2003. (Def.'s Mem., Undisp. Facts ¶ 12, ex. I).
9. The joint status of the credit card account remained unchanged during the Plaintiff and wife's estrangement and payments continued to be made. (Def.'s Mem., Undisp. Facts ¶ 13, ex. F).
10. Plaintiff notified Capital in May and June 2003 that he disputed his responsibility for any indebtedness on the account(s). (Def.'s Mem., Undisp. Facts ¶¶ 16, 54, exs. K & Q).
11. Capital instituted a fraud investigation in response to each dispute and suspended further use of each account pending completion of the investigations. (Def.'s Mem., Undisp. Facts, ¶¶ 17, 55, exs. C & L).
12. Upon confirming that payments had been received on the account from a joint checking account bearing the Plaintiff and wife's names and personal identifying information, including the same residence address, Capital concluded each fraud investigation, rebilled the disputed charges, and notified the Plaintiff that he would be responsible for the indebtedness unless his wife signed a letter of sole responsibility. (Def.'s Mem., Undisp. Facts, ¶¶ 19-22, 56-59, exs. L & Q).
13. Plaintiff's wife declined to sign a letter of responsibility. (Def.'s Mem., Undisp. Facts ¶¶ 22, 60, exs. L & Q).
14. Capital also received three automated customer dispute verification (ACDV) requests on each account from the three credit reporting agencies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Equifax, Experian, and TransUnion) (CRAs) from May through September 2003 describing the dispute as "Not his/hers" and asking the Defendant to "Provide complete ID." (Def.'s Mem., Undisp. Facts ¶¶ 23-25, 27-28, 31-32, 61-63, 65-66, 68-69, exs. M & R).

15. In each instance, Capital reviewed its account records, noted that payments had been made on the accounts from checking accounts with the Plaintiff's name and the same billing address on the payment checks, and verified the account information back to the CRAs.[FN4] (Def.'s Mem., Undisp. Facts ¶¶ 26, 29, 33, 57, 64, 67, 70).

> FN4. In one instance, the Defendant corrected the account information to reflect a new address for the Plaintiff, and in another, reinstated the account after it had been initially deleted as the result of a "data entry error." (Def.'s Mem., Undisp. Facts ¶¶ 30, 33).

*3 16. When reviewing an ACDV notice, Capital did not review any other records it may have maintained on the consumer, even though it had to know that the dispute was based on account information it had forwarded. (Pl.'s Opp'n Mem. ¶ 10 at 8-9, citing Disc. Deps.).

17. Although it is fair to infer that the Plaintiff reaped some benefit from the use of the subject credit cards, there is no evidence that any charge was for a medical emergency or other medical necessity of the spouse for which Plaintiff could be held liable under any "necessaries" doctrine. *See Schilling v. Bedford Co. Memorial Hosp., Inc.,* 225 Va. 539, 303 S.E.2d 905 (Va.1983) (holding that the necessaries doctrine, whereby a husband is responsible for necessaries provided to the spouse, is unconstitutional because it is based on a gender classification that is not justified by any important governmental objective).

18. There is no evidence that the Plaintiff was aware that the credit card indebtedness was being reported on his credit report before the spring of 2003 when he first disputed the obligations.

Plaintiff's Claims

The Plaintiff asserts in his Amended Complaint (Complaint) a claim for common law defamation for Capital's willful publication of the allegedly false information that the Plaintiff was liable for the credit card indebtedness and a claim for violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 s-2(b), in reporting such allegedly false representation, failing to reasonably investigate the Plaintiff's dispute of his liability for the indebtedness, and its failure to correctly report the results of any investigation to the CRAs. (Compl.). As a result of such allegedly willful or negligent conduct, the Plaintiff asserts that he suffered damage to his credit status; lost the ability to purchase and benefit from a more favorable credit rating; and incurred various non-economic damages, including mental and emotional pain, anguish, humiliation, and embarrassment so as to justify an award of actual, statutory, and punitive damages, plus attorney's fees, costs, and interest. *Id.*

Analysis

The court deems it appropriate to first consider the Plaintiff's motion to strike the exhibits offered by the Defendant in support of its motion for dispositive relief and then to consider the Defendant's motion, with final consideration of the Plaintiff's reciprocal motion for partial summary relief.

*Plaintiff's Motion to Strike*

The Plaintiff moves to exclude several of the exhibits (exhibits C, D, E, F, G, N, O, and S) that the Defendant has offered in support of its motion for summary judgment on the essential ground that the documentation presented is not properly authenticated. (Pl.'s Motion Strike Exs. Proffer'd & Attach'd Supp. Mot. Summ. J. (Pl.'s Mot. Strike). The exhibits in question are copies of account statements (exs. C and E); credit reports (ex. D); checks received in payment (ex. F); account action summaries (ex. G); credit reporting agency (CRA) dispute notices (ex. N); a deposition testimony

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                            Page 4

Slip Copy, 2005 WL 3338663 (E.D.Va.)
**(Cite as: Slip Copy)**

excerpt (ex. O); and a credit card application with records of action taken in regard to the application (ex. S). The Plaintiff argues that the Defendant has failed to satisfy the governing procedural rule requiring authentication "either by affidavit, deposition or on some other evidentiary basis, such as admission of a party":

*4 To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. Thus, a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or a deposition.

(Pl.'s Mot. Strike at 3-4) (quoting *Federal Practice & Procedure,* Wright, Miller & Kane, § 2722). The Plaintiff further complains that even if such authentication was provided, it would not necessarily protect against the unreliability of, for example, the double hearsay contained in the record of charges made on the card. (*Id.* at 4-5 ("Even if Capital One had authenticated such documents, the best it could argue was that its records showed that a specific merchant had reported to it that another person had made a charge on the account.")).

The Defendant responds to the effect that it has now authenticated the records by certification of a custodian of the business records involved that the Defendant argues should be considered by the court because the record is not yet closed (to which Plaintiff objects for not having been filed in support of the motion initially); that the Plaintiff can hardly complain because he is relying on some of the same records, *e.g.,* check payments; and that the Plaintiff cannot claim surprise or prejudice because Plaintiff's counsel has had such documents since early production by Defendant. (Def.'s Mem. Opp'n Pl.'s Mot. Strike Summ. J. Exs.).

Aside from the fact that most of the records are internal business records of the Defendant that are not *per se* inadmissible on their face [FN5] and can be readily authenticated by an appropriate witness, if they are not already by the supplemental affidavit provided, and aside from the fact that the Plaintiff offers at least one of them (ex. F) in support of his own motion, the issue is rendered moot because the court holds in granting the Plaintiff's motion for partial summary judgment that the undisputed evidence establishes the Plaintiff to have been, at most, only an authorized user of the credit card or cards involved and not liable for the subject indebtedness. Therefore, where the exhibits in question would only be relevant if the court concluded he would be liable, their inclusion in the record is of no significance. Nevertheless, the court exercises its discretion to deny the motion as moot (as opposed to granting the motion and striking the exhibits from the record) in order to allow the materials to be considered on possible appellate review.

FN5. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1551 (9th Cir.1990).

*Defendant's Motion for Summary Judgment*

Reduced to its essence, Capital argues that it is entitled to dispositive relief on all claims because it accurately reported the status of the two accounts to the CRAs based on repeated investigations that it contends were reasonable and in full compliance with all statutory and/or regulatory requirements; that such efforts rebut any assertion of willful misconduct, reckless disregard of the truth, or any degree of negligence so as to sustain a claim for defamation or punitive damages; and, finally, the pendant claim for defamation is pre-empted by the FCRA in any event. (Def.'s Mem.; Supp'l Mem. Pts. & Auth. Supp. Def.'s Mot. Summ. J. (Def.'s Supp'l Mem.)). Capital bases its position on what it asserts to be the relevant, undisputed facts, namely, that the Plaintiff "does not deny opening [the] joint credit card account"; [FN6] that Capital received multiple payments "on these accounts from checking accounts that bear Larry Alabran's name, address, social security number, and telephone number"; that Capital sent monthly statements to the address listed on the checks bearing the names of Plaintiff and his wife; that the Plaintiff admits to having made " multiple" payments himself on the account that was maintained in his name; that the Plaintiff made purchases on the accounts; and that it is at least reasonable to infer that the Plaintiff benefitted from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

goods and services purchased through use of the cards. *Id.*

> FN6. In fact, the Plaintiff emphatically denies even knowing the joint credit card obligation existed, let alone having opened it. (Pl.'s Opp'n Mem. at 5-6 (citing disc. excerpts)).

*5 The FCRA provides what has been referred to as qualified immunity for a furnisher such as Capital that had a reasonable basis to conclude its reporting procedures were accurate:

... no consumer may bring any action ... in the nature of defamation ... based in whole or in part on the report, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

The Plaintiff's defamation claim would therefore be pre-empted pursuant to § 1681h(e) in the *absence* of an allegation and proof at trial of " 'such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff." ' *Preston v. Land,* 220 Va. 118, 121, 255 S.E.2d 509 (Va.1979) (quoting *Chesapeake Ferry Co. v. Hudgins,* 155 Va. 874, 902, 156 S.E. 429 (1931) (the controlling definition of the relevant element of defamation); *see also Jeffery v. Trans Union, LLC,* 273 F.Supp.2d 725, 728 (E.D.Va.2003) (citing *Beattie v. NationsCredit Fin. Servs. Corp.,* No. 02-1744, 2003 WL 21213703 (4th Cir. May 27, 2003) (affirming the granting of summary judgment as to a state defamation claim for lack of evidence of wilfulness sufficient to avoid preemption of § 1681h(e)); *Swecker v. Trans Union Corp.,* 31 F.Supp.2d 536, 540 (E.D.Va.1998) ("the explicit language of the FCRA [§ 1681h(e) ] makes clear that the statute does not completely preempt all state causes of action for defamation"); and *Rule v. Ford Receivables, Inc.,* 36 F.Supp.2d 335 (S.D.W.Va.1999) (rejecting an argument that the FCRA completely preempts state negligence claim). The undisputed facts here, however, with all reasonable inferences being drawn in favor of the non-moving party (the Plaintiff), support a potential jury determination that the Defendant's actions were, at the very least, grossly indifferent and reckless. (Findings ¶¶ 12, 15). Capital only checked personal identifier information, and its own corporate representative acknowledged in a Rule 30(b)(6) deposition, correctly and necessarily, that an authorized user is *not* liable for the indebtedness. (Findings, ¶¶ 7, 12, 15). Dispositive relief is therefore precluded as to the claim of defamation in regard to whether the reporting of the Plaintiff being liable for the indebtedness is true or false, because it was false as a matter of law.[FN7] The only remaining issue is whether the element of willfulness/recklessness can be established, and that is for a jury to determine.

> FN7. Thus, the Plaintiff's countervailing argument for partial summary judgment must be granted as to the issue of whether the information reported by Capital was accurate.

The Defendant also asserts that it is entitled to " immunity" pursuant to § 1681t(b)(1)(F). The statute provides, in pertinent part, that *no state* shall enact laws concerning "the responsibilities of persons who furnish information to consumer reporting agencies" regarding the multiple responsibilities of the federal statutory scheme (15 U.S.C. § 1681 s-2) for furnishers to provide correct, updated information, and to respond to consumer disputes with reasonable efforts that include adequate notice once the furnisher has received notice of a consumer dispute from a CRA. (Def.'s Mem. at 17-18; Def.'s Supp'l Mem. at 6-7). A conflict has developed among various courts as to how to interpret and apply the two statutory provisions. The debate is thoroughly analyzed in *Jeffery v. Trans Union, supra,* from this court, as well as decisions from other circuits. *See, e.g., Malm v. Household Bank, N.A.,* No. 03-4340 2004 U.S. Dist. LEXIS 12981 (D.Minn. July 7, 2004). This court adopts the reasoning and holding of *Jeffery* that "the plain language of Section 1681t ... supports the conclusion that Section 1681t(b)(1)(F) does not apply to state tort claims." *Jeffery v. Trans Union,* 273 F.Supp.2d at 728. Simply put, on its face, the statutory language prohibits a state from pursuing an independent statutory path in such

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 6

Slip Copy, 2005 WL 3338663 (E.D.Va.)
(Cite as: Slip Copy)

matters without precluding the pursuit of a pendant state tort claim.

*6 As to the merits of Plaintiff's FCRA claims, Capital argues that it cannot be held liable for any violation, as a matter of law, because it was only obliged to respond in a reasonable way to any inquiry from a CRA and that it did so. (Def.'s Mem. at 19-22; Def.'s Supp'l Mem. at 7-9).[FN8] Specifically, Capital asserts that it received multiple ACDV notices from the CRAs and that all of them reported only an identity dispute ("Not his/hers. Provide complete ID."), not an identity theft or fraud alert. (Def.'s Supp'l Mem. at 7-9). As such, Capital asserts it was only required to confirm personal identifiers in the account, that is, "whether the Larry Alabran who owned these accounts was the same Larry Alabran who was now disputing them." (*Id.* at 8). Accordingly, Capital reviewed such personal identifiers as name, social security number, address, and mother's maiden name and confirmed:

> FN8. The Defendant correctly argues that no claim exists as to any violation of § 1681 s-2(a)(3) for failure of Capital to notify the CRAs of the Plaintiff's dispute because the provision can only be enforced by certain governmental entities, but the Plaintiff responds that he is pursuing claims under § 1681 s-2(b) that does not preclude a private cause of action as is apparently acknowledged by the Defendant's arguments regarding any § (b) violation. (Def.'s Mem. at 20-22).

"to a sufficient degree of confidence that permitted Capital One Bank to conclude that the Larry Alabran who had used and enjoyed these credit card accounts for more than six years during the course of his marriage to Mersine, was the same Larry Alabran who was now disputing these credit card accounts for the first time, shortly after he filed for divorce.
*Id.* at 9.

In support of its position, the Defendant urges the court to adopt the holdings from other circuits involving the same CRA notification, "Not his/hers. Provide complete ID.," in which those courts (district and appellate levels) found that such notice was too "scant" or otherwise insufficient to require the furnisher to do anything more than Capital did in the present case. Specifically, the Defendant relies on *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir.2005), and *Malm v. Household Bank, N.A., supra,* in which both courts held that the scope of "reasonableness" for the required investigation by a furnisher in response to a notice of a consumer's dispute from a CRA is defined and confined by the information provided in the notification, and that the simple indication that the consumer was disputing a charge, without any indication of possible fraud or identity theft, did not require the furnisher to do more than confirm the identity of the protesting consumer.

At the same time, the Plaintiff asserts that the Fourth Circuit opinion in *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir.2004), controls whereby the court held "that § 1681 s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified," and that the factfinder (jury) had a basis to find that the furnisher's efforts, which the Plaintiff asserts mirror those of Capital here, were unreasonable. The multiple notifications from different CRAs in *Johnson* were "CONSUMER STATES BELONGS TO HUSBAND ONLY" and "WAS NEVER A SIGNER ON ACCOUNT. WAS AN AUTHORIZED USER." *Id.* at 419. The court in *Johnson* interpreted such information as indicating the consumer was disputing that she was a co-obligor on the account so that mere confirmation of the identity of the consumer without reference to additional information available to the furnisher in its own records would-and did-form a sufficient basis for the jury to have found the furnisher's investigation to be unreasonable. *Id.* at 431-432.

*7 In the present case, Capital argues that *Johnson* is not controlling because the information provided by the CRA notification in *Johnson* was quantatively different where the furnisher was

Slip Copy                                                                                                                 Page 7
Slip Copy, 2005 WL 3338663 (E.D.Va.)
**(Cite as: Slip Copy)**

clearly put on notice that the dispute involved more than the consumer claiming that he/she was not the same person who was obligated on the account. (Def.'s Mem. at 21-22). However, aside from the fact that *Westra* and *Malm* are not controlling for being from other circuits, they are distinguishable from *Johnson* and this case for a different reason, and with a different result, than urged by Capital. Specifically, in *Johnson* and here, the Plaintiff had lodged the dispute directly with the furnisher involved as well as the CRAs, and although the furnishers did not have the obligation under § 1681 s-2(b)(1) to conduct a "reasonable" investigation until they received notice from a CRA, they maintained the specifics of the dispute in their records that would have detailed the problem *if* the investigation reached beyond simply confirming identity. The issue in both *Westra* and *Malm* was that of identification, that is, whether the person making the dispute was the same person who was obligated on the account, *i.e.,* ID fraud.[FN9] In both *Johnson* and the present case, however, the dispute concerned whether the person making the dispute was an authorized user and, if so, whether they were obligated for the indebtedness.

> FN9. Even though *Malm* involved a scenario similar to this case with estranged spouses, in *Malm*, both parties reported to the furnisher that the plaintiff "should not be listed on the account." *Malm* at *3. As such, the issue involved more than an identification confirmation, but such information was not provided to the CRAs.

In addition, and particular to this case of whether dispositive relief is available to Capital, its own Rule 30(b)(6) witness testified in deposition that Capital had received the same dispute code over time in regard to consumer disputes in which Capital understood that the consumer, like the Plaintiff here, denied the obligation because they were only an authorized user versus not being the person who had used the card. (Pl.'s Mem., ex. 5A at 22 (Dep. of Sarah Cheek). Nevertheless, a Capital employee responding to an ACDV notice of consumer dispute would not conduct any investigation under any circumstance of even Capital's own internal files beyond confirming identity which allows for the reasonable inference that no further investigation would be undertaken even if there was an indication of fraud. *Id.,* ex. 5A at 24; *see also* ex. 4A at 69 (Dep. of Karen Crews).

In both *Westra* and *Malm*, the consumer lodged his/her dispute with only the CRA (or, as in *Malm,* with a successor creditor/furnisher) such that the furnisher involved did not have any additional information at its disposal to at least clarify what those courts concluded to be insufficient notification. Here, Capital's own witness has confirmed in discovery that the notification of "Not his/hers" indicated that the consumer disputed that he/she was a co-obligor on the account, the same significance attached by the court to the arguably more specific notice in *Johnson.* As such, dispositive relief is precluded where there exists a genuine issue of disputed material fact as to whether, under the particular facts and circumstances of this case, Capital usurped any obligation to conduct a reasonable investigation upon receipt of the CRA notices because it had at least clarifying information available.

*Plaintiff's Motion for Partial Summary Judgment*

*8 The Plaintiff moves for partial summary judgment on the sole issue of whether he was obligated on the subject indebtedness or not as that is relevant to the defamation claim, and whether Capital forwarded inaccurate information to the CRAs so as to be in potential violation of the FCRA. Capital initially responds by objecting to the Plaintiff's filing of the motion three days late. (Mem. Pts. & Auth. Supp. Def.'s Mot. Strike Pl.'s Mot. Partial Sum. J.). The Plaintiff responds that the Defendant has not been prejudiced by the minimal delay if, for no other reason, than the issue of the accuracy of the information provided by Capital was thoroughly explored in conjunction with the Defendant's own motion for dispositive relief. The court concurs that there are no disputed material facts remaining after resolution of the Defendant's motion concerning whether the Plaintiff was or was not obligated on the subject indebtedness [FN10] such that the resolution of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 8

Slip Copy, 2005 WL 3338663 (E.D.Va.)
**(Cite as: Slip Copy)**

issue of the accuracy of the information is a question of law that would have to be resolved by the court anyway at some point. Accordingly, the motion will be entertained and GRANTED for the reasons already discussed.

> FN10. Because the Defendant cannot produce the application for the first card and does not contend that the Plaintiff signed the second one as a co-obligor. (Findings ¶ 2).

### CONCLUSION

The undisputed facts establish that the Plaintiff was an authorized user of the subject accounts, but not obligated for the indebtedness. Therefore, the information provided to the credit bureaus by Capital that he was a co-obligor was inaccurate. Moreover, genuine issues of disputed material fact exist as to whether Capital's reporting of the inaccurate information was done with such a degree of recklessness and/or negligence as to support the remaining elements of the defamation claim. In addition, genuine issues of material fact exist as to whether Capital conducted a reasonable investigation upon being notified by the credit bureaus of the Plaintiff's dispute. The Plaintiff's motion for partial summary judgment must therefore be GRANTED and the Defendant's motion for total dispositive relief DENIED, the Plaintiff's motion to strike the Defendant's supporting exhibits being DENIED as moot for the reasons stated.

An appropriate Order shall issue.

E.D.Va.,2005.
Alabran v. Capital One Bank
Slip Copy, 2005 WL 3338663 (E.D.Va.)

Briefs and Other Related Documents (Back to top)

• 3:04cv00935 (Docket) (Dec. 23, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT B**



```
CCS00001-2330                                                         09/09 10:09 A.M.
SEPTEMBER 08, 2000                                                    SEP.
DAILY                          BANK OF AMERICA                        DAY 252
                  CLIENT, PURGE EVENT LOG JOURNAL                     PAGE 63,912
PROVIDER-1 100000   PROVIDER 1, ACCT, EVENT TYPE


4427100001870265                LAMO  006884    022800   05:05 PM    900
SHERYL L LUPO                                                        NICOLE D MCDOWELL    CS CS - CHANGED ACCOUNT STATUS TO CUST CLSD - PAYING OFF
                                                                     DEBIT PER SHERYL L LUPO PHONE REQUEST.CHANGED ACCOUNT STATUS TO REINSTATED PER
                                                                     SHERYL L LUPO PHONE REQUEST.REQUESTED IMMEDIATE CLOSURE LIABILITY CHANGE
4427100001870265                LAMO  006884    022800   05:05 PM    980
SHERYL L LUPO                                                        CONFIRMED FOR CUSTOMER SHERYL L LUPO. SENT VIA MAIL. CLOSED ACCOUNT DUE TO
                                                                     LIABILITY CHANGE.
```

BA000132

```
CCS00001-2330                                                                           01/27 09:52 A.M.
                          BANK OF AMERICA                                                     DAY 026
                          LOG JOURNAL

                                    REDACTED

44271000187Ø265                BAT    000000  072800  01:29 PM   434
SHERYL L LUPO                                                    ACTION/RESULT CODE      ACTION TR TELEPHONED RESIDENCE
                                                                                         RESULT NA NO ANSWER
                                                                 NEXT WORK DATE          07/29/00
44271000187Ø265                BAT    000000  072700  09:20 PM   434
SHERYL L LUPO                                                    ACTION/RESULT CODE      ACTION TR TELEPHONED RESIDENCE
                                                                                         RESULT NA NO ANSWER
                                                                 NEXT WORK DATE          07/28/00
44271000187Ø265                LAMO   1123DN  071800  01:46 PM   900
SHERYL L LUPO                                                    DONNA NYE CS CS - REQUESTED LIABILITY CHANGE FORMS PER SHERYL
                                                                 VIA MAIL REQUESTED LIABILITY CHANGE FORMS PER SHERYL L LUPO SENT
44271000187Ø265                BAT    000000  072700  09:20 PM   901
SHERYL L LUPO                                                    UNISON CALL - NO ANSWER
44271000187Ø265                BAT    000000  072800  01:29 PM   901
SHERYL L LUPO                                                    UNISON CALL - NO ANSWER
```

*again tried @ Sheryl Lupo home*

BA000134

20032 001268

AUG 29 2000

BANK OF AMERICA NA
CREDIT/NEW ACCTS

# TRANSFER OF RESPONSIBILITY FORM (Part 1)

**TO BE COMPLETED BY PERSON TAKING PAYMENT RESPONSIBILITY**

**Responsibility and Account Usage**

I, __Van Lupo__ request that __my name + responsibilty__ be removed from this account relieving them of payment responsibility and further use of this account. I agree to assume full responsibility for all current and future balances on this account. If the Bank denies this request, the account will be cancelled and I understand that all parties to my account will remain jointly and individually responsible for any unpaid balance.

**Overdraft Protection (For Bank of America Checking Accounts Only)**   NA   (UTL)

(__) I do not currently have this service.
(__) Please continue this service. There is no change to my checking account number.
(__) Please transfer this service to my new checking account.
   Checking Account Number _____
   (__) Please enclose a voided deposit slip
   This change will interrupt service for 3 to 5 business days from the date the request is processed.
(__) Please cancel this service.

**Automatic Payment Service**   NA   4427-1000-0187-0265
                                     Van Lupo
                                     SS# 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

(__) I do not currently have this service.
(__) Please continue this service. There is no change to my checking account number.
(__) Please transfer this service to my new checking account.
   Checking Account Number _____
   (__) Please enclose a voided deposit slip
   Check One (__) Minimum Payment  (__) Payment in Full
(__) Please cancel this service.

**Personal Information**

Street __1181 Pacific Cove Ln__

City __HB__  State __Ca__  Zip __92648__

Home Phone (__714__) __536-8768__  Work Phone (__) _____

Employer's Name __NA__

Employer's Address __NA__

Occupation __NA__  How Long _____  Monthly Income $_____

Other Income $ __500__  Source __Consulting__  Monthly Amount $ __500__

Signature __Van Lupo__ / __Sheryl Lupo__    Date __8-7-00__

I authorize the Bank to verify my information and to obtain additional information from me, credit bureaus, and other third parties in order to make its credit decision. I also agree that the Bank may lower the credit line on my account based on my current financial and credit information.

NATB10-0034

BA000158

# ASSUMPTION OF RESPONSIBILITY FORM (Part 2)

## TO BE COMPLETED BY PERSON REQUESTING TO BE REMOVED FROM ACCOUNT

I, __Dan A Lupo__ (Name) request that my name be removed from this account. I understand that my request is subject to the assumption of payment responsibility by _____ and the Bank's approval of such assumption. If the request to assume liability is denied, all parties will remain jointly and severally liable for any remaining account balance. If the request to assume liability is denied, the account will be cancelled and I will be responsible for the remaining balances and for new charges made by me. I will not be responsible for any new transactions made by any other person(s) listed on this account. I understand that if my name is removed, the credit history established for this account may be deleted from my credit file. I understand further that I may apply for a new account in my name only, subject to the Bank's approval.

**Account Number(s)**       Acct closed

**Overdraft Protection**
I understand that if my request is approved, I will not be able to access my existing Instant Cash Overdraft Protection associated with this account.

**Personal Information:**
Address __1181 Pacific Cove Ln__
City __Hunt Bch__   State __Ca__   Zip __92648__
Home Phone (__714__) __536-8768__   Work Phone (__949__) __790-2084__

**To Be Completed By All Parties**
By signing below, we understand and agree that each of us will be liable on this account until the Bank approves the changes requested on this form. However, the party requesting to be removed from the account will not be responsible for new charges made by the other party after the Bank approval of the request for removal. We have destroyed all outstanding cards for this account except those issued in the name of the cardmember assuming primary payment responsibilty.

| Party Keeping Account | Social Security | Date |
|---|---|---|
|  | acct closed |  |

| Party Keeping Account | Social Security | Date |
|---|---|---|

| Party Not Keeping Account | Social Security | Date |
|---|---|---|

(___) If other liable parties cannot be located for signature, please indicate by checking here. If approved, your outstanding balance will be transferred to the new account. In order to ensure that charges do not continue to post to the old account all cards must be destroyed.

BA000159

NATB11-0048